The **NEBRASKA HEALTH CARE ASSO- CIATION, INC.,** a Nebraska Nonprofit Corporation; the Evangelical Lutheran Good Samaritan Society, a North Dakota Nonprofit Corporation; W.S.T. Care, Inc., d/b/a Crestview Care Center, a Nebraska Corporation, Appellees,

v.

Gina **DUNNING,** Director of the Nebraska Department of Public Welfare; Kay C. Orr, Treasurer of the State of Nebraska; Clifton A. Sexton, Jr., Director of Administrative Services, Appellants.

No. 84–2397.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1985.*

Filed Dec. 9, 1985.

As Amended on Denial of Rehearing Feb. 25, 1986.

See also 575 F.Supp. 176, 578 F.Supp. 543.

---

* This case was argued on May 17, 1985. Post-argument briefs were requested by the Court, the last of which was received by the panel on September 9, 1985.

Michael Rumbaugh, General Counsel, Lincoln, Neb., for appellants.

Royce N. Harper, Asst. Atty. Gen., Lincoln, Neb., for appellees.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and REGAN,** Senior District Judge.

ARNOLD, Circuit Judge.

The question presented is whether certain Nebraska statutes regulating reimbursement to providers of nursing-home services under the Medicaid program conflict with the requirement of the Social Security Act, 42 U.S.C. § 1396a(a)(13)(A) that reimbursement rates must be "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities...." The plaintiffs, representing operators of long-term medical-care facilities, challenged the application of the state laws in question with respect to two fiscal years, 1982–83 and 1983–84. The District Court[1] held both statutes unconstitutional under the Supremacy Clause, finding them inconsistent with federal law. On this appeal, defendants, who are state officials, have abandoned their attempt to uphold one of the challenged statutes. As to the other state law in question, we hold that the state's submission seeking approval of its reimbursement plan for the fiscal year 1982–83 failed to comply with the plain terms of federal regulations. The judgment of the District Court, enjoining enforcement by the state of its plan, is therefore affirmed as to the first of the two fiscal years in question. As to the second fiscal year, we hold that the case is not yet ripe for judicial determination. An administrative proceeding is still pending within the Social Security Administration with respect to fiscal year 1983–84. We therefore affirm in part, vacate in part, and remand for further proceedings on the issue of attorneys' fees.

I.

The Medicaid program is a joint venture between the federal government and participating states. When a state decides to participate, as Nebraska has, it must submit to the Department of Health and Human Services a satisfactory state plan which meets the payment standard of the Boren Amendment, codified at 42 U.S.C. § 1396a(a)(13)(A) (Supp.1985). That statute provides in relevant part:

(a) Contents

A State plan for medical assistance must—

\* \* \* \* \* \*

(13) provide—

(A) for payment ... of the hospital, skilled nursing facility, and intermediate care facility services provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State ...) which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable state and federal laws, regulations, and quality and safety standards....

In 1981, Nebraska established a payment plan including its definition of an efficiently and economically operated facility. Under this plan, the nursing homes would give the Nebraska Department of Public Welfare[2] (DPW) a report of their costs for

** The Hon. John K. Regan, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Hon. Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

2. The name of the department has since been changed to the Nebraska Department of Social

Medicaid patients at the end of the fiscal year. DPW would then subtract any costs not allowed and compute each nursing home's "allowable cost" per Medicaid patient day. This figure is then compared with other nursing homes in the same class, and they are ranked from the least expensive to the most expensive. The Department then selected the 65th percentile as the one at which it would pay all allowable costs. Under this plan, if nursing homes as a whole provided 100,000 days of Medicaid care, then the nursing homes with the least expensive 65,000 days would be paid their full allowable costs for the preceding year. Those in the 66th to 100th percentiles would be paid the same rate as those homes at the 65th percentile. Although the plan as written was designed to pay for a minimum of 65 per cent. of Medicaid patient days, DPW's actual practice was to pay the full allowable costs up to the 82nd percentile.

In August 1982, DPW, pursuant to a new statute, Neb.Rev.Stat. § 68–720 (Supp. 1983) amended its plan for reimbursement to nursing homes. The amended plan provided that payments to a vendor of Medicaid services for fiscal year 1982–83 would be limited to the reimbursement allowed to that vendor on April 1, 1982, plus 3.75 per cent. This "cap" was later extended by the Legislature to a second fiscal year, 1983–84.[3]

Late in July of 1982, the new state plan was sent to the regional office of the Health Care Financing Administration for approval. This administration is a part of the Department of Health and Human Services and is responsible for approving state Medicaid plans. 42 C.F.R. § 447.256. The plan contained a provision implementing § 68–720, the 3.75 per cent. "cap." On

September 22, 1982, the regional office approved the plan for the fiscal year 1982–83. It was provided that the new plan should be considered to have taken effect on August 1, 1982.

Later, in the spring of 1983, the Nebraska Legislature extended the 3.75 per cent. "cap" until June 30, 1984. On February 15, 1984, after the case was tried in the District Court but before it was decided, the extension of the 3.75 per cent. limitation for a second fiscal year was disapproved, apparently by the regional office of the Health Care Financing Administration. We were informed at the oral argument that the propriety of this disapproval is now pending on some kind of administrative appeal within HHS, proceedings which HHS has stayed pending the outcome of this lawsuit.

The District Court held that the 3.75 per cent. limitation prevented proper reimbursement under § 1396a(a)(13)(A). It found as a fact that during the last five months of 1982, 177 facilities incurred allowable costs at or below the 65th percentile, but 34 of those facilities did not receive reimbursement for all of their allowable costs solely because of § 68–720. In 1983, the Court further found, "131 of the 177 facilities suffered the same fate." *The Nebraska Health Care Association v. Dunning*, No. CV82–L–472 (D.Neb. July 10, 1984), slip op. 6. The state's plan, the District Court reasoned, "said in effect that facilities whose adjusted allowable costs were equal to the 65th percentile costs were efficiently and economically operated facilities...." *Id.* at 7. A state statute whose operation prevented reimbursement of a significant number of facilities at a level found reasonable by the state did not satisfy the Boren Amendment. This appeal followed.

---

Services. See Neb.Rev.Stat. § 68–701 (Supp. 1983).

**3.** The Legislature also enacted § 68–721 (1982 Cum.Supp.), providing for a pro rata reduction in reimbursements "[i]f, at any point during the fiscal year Medical Assistance funds are being expended at a rate that would exceed funds

available for Medical Assistance expenditures for the fiscal year...." The District Court held this statute also invalid as in conflict with the Boren Amendment. Defendants do not contest this holding on appeal, see Brief for Appellants 2, so we do not address the issue.

## II.

 As to fiscal year 1982–83, we affirm, though on a somewhat different basis from that used by the District Court. The uncontradicted record in this case shows that the state's submission of its plan for the fiscal year 1982–83 failed to submit crucial information required by regulations of the Health Care Financing Administration. HCFA's purported approval of the 3.75 per cent. limitation was, therefore, invalid, and the state had no right to put this portion of its plan into effect, unless, of course, it chose to do so solely with its own funds, which it has not done.

When state plans are submitted, the relevant state agency must make certain findings and submit certain assurances and related information for consideration by HCFA. These requirements are set out at 42 C.F.R. §§ 447.250–.272 (1982).[4] The state Medicaid agency, here DPW, must submit, along with these assurances, the amount of the average proposed payment rate for the various types of long-term care providers and the amount of increase or decrease from the last rate period. The state must also provide:

> (2) A quantified estimate of the short-term and, to the extent feasible, long-term effect the changes in the rate will have on—
>
>> (i) The availability of services on a Statewide and geographic area basis;
>>
>> (ii) The type of care furnished (for example, secondary or tertiary care);
>>
>> (iii) The extent of provider participation; and
>>
>> (iv) The degree to which costs are covered in hospitals that serve a disproportionate number of low income patients with special needs.

42 C.F.R. § 447.255(b) (1982).

As the District Court observed,

> The defendants admit that the department did not conduct any objective analysis or studies to determine the effects of § 68–720's limitation on the level of care Medicaid patients would receive or the extent to which facilities would continue to participate in Medicaid.

Slip op. 9. Thus, the quantified estimates of various effects of the 3.75 per cent. limitation, required to be submitted by the applicable regulation, which we have quoted, could not have been submitted, because the state never conducted any objective analysis or studies to determine these effects. Accordingly, as the District Court found, "there is no objective evidence to support the assurances which the department gave to the federal government." *Id.* at 10. The state's submission of its new plan was simply not accompanied by any information even purporting to meet the requirements of the federal regulation. This fact, without more, is sufficient to invalidate HCFA's purported approval of the 3.75 per cent. "cap" for the fiscal year 1982–83. There was no factual basis for the assurances Nebraska submitted to HCFA, and HCFA's approval, being based on unsupported assurances, is without legal effect. See *California Hospital Ass'n v. Schweiker*, 559 F.Supp. 110, 117 (C.D. Cal.1982), *aff'd*, 705 F.2d 466 (9th Cir.1983).

It is therefore unnecessary for us to reach the District Court's conclusion that the 3.75 per cent. limitation was arbitrary and capricious, or to review its factual findings as to this limitation's effect in practice. The failure of the state to satisfy the requirements of federal regulations when the plan was submitted is a sufficient basis for affirming the District Court's judgment enjoining the state from giving effect to § 68–720 with respect to fiscal year 1982–83.

## III.

 The same result does not necessarily follow, however, with respect to fiscal year 1983–84. As to this year, HCFA has initially disapproved the 3.75 per cent. limitation, apparently finding the state's assur-

---

**4.** We cite the 1982 version of the regulations because they were in effect at the relevant times.

ances insufficient. But we do not yet know whether this disapproval will be the final decision of HHS because the state is prosecuting an administrative appeal within HHS from the initial disapproval of the plan. Representatives of providers of nursing-home services have intervened in this administrative proceeding in support of HCFA's initial disapproval. In this situation, we agree with the position taken by the United States as amicus curiae that the case is not yet ripe for judicial determination with respect to fiscal year 1983–84. If the initial disapproval of the 3.75 per cent. limitation with respect to this second fiscal year is ultimately upheld by HHS, we have no reason to believe that the state will not acquiesce in this decision and make payments at the proper level to the providers whom plaintiffs represent. If, on the other hand, HCFA's initial disapproval is reversed, and the 3.75 per cent. limitation is approved for the second fiscal year, the providers may return to court and pursue their claim that such approval is arbitrary, capricious, and contrary to the Boren Amendment. And, if the case does come back to court ultimately, the court may be significantly aided by whatever administrative record is compiled, as well as by the agency's reasoning. This is a complicated field, and if there is such a thing as "expertise," it is more likely to be possessed by the agency than by the courts. Accordingly, the District Court's judgment, insofar as it invalidated § 68–720 with respect to fiscal year 1983–84, will be vacated, with leave to any party aggrieved to seek relief again from the courts when the issue becomes definite and ripe.[5]

## IV.

■ The District Court awarded plaintiffs an attorneys' fee of $51,195.00, together with expenses of $1,078.20. Whether a fee is allowable depends on whether this suit is properly characterized as an action under 42 U.S.C. § 1983, because, if it is, § 1988 authorizes the award of fees and expenses to the prevailing parties. The District Court disposed of this issue in plaintiffs' favor, reasoning as follows:

> ... suits in federal court under § 1983 are proper to secure compliance with the provisions of the Social Security Act by participating states, *Maine v. Thiboutot,* 448 U.S. 1, 4 [100 S.Ct. 2502, 2504, 65 L.Ed.2d 555] (1980); *Blue v. Craig,* 505 F.2d 830, 832–33 (4th Cir.1974), including suits by Medicaid service providers to challenge the wrongful administration of a Medicaid program by a state. *Yapalater v. Bates,* 494 F.Supp. 1349, 1357–58 (S.D.N.Y.1980), *aff'd,* 644 F.2d 131 (2d Cir.1981), *cert. denied,* 455 U.S. 908 [102 S.Ct. 1255, 71 L.Ed.2d 447] (1982).

Slip op. 5.

We agree. Both the District Court and this Court have held, though for somewhat different reasons, that the state plan for the year 1982–83 is inconsistent with that portion of the Social Security Act known as the Boren Amendment. In *Maine v. Thiboutot, supra,* the Supreme Court specifically held that " 'suits in federal court under § 1983 are proper to secure compliance with the provisions of the Social Security Act on the part of participating states.' " 448 U.S. at 4, 100 S.Ct. at 2504, quoting *Edelman v. Jordan,* 415 U.S. 651, 675, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974). The Social Security Act, including the Boren Amendment, is a "law" within the meaning of 42 U.S.C. § 1983, which creates a right of action for people who, under color of any state law, are deprived of a right secured "by the Constitution *and laws*" of the United States. "[T]he plain language of the statute undoubtedly embraces [plaintiffs'] claim that [defendants] violated the Social Security Act." 448 U.S. at 4, 100 S.Ct. at 2504.

---

**5.** The plaintiffs suggest that this disposition overlooks the possible effect of statutes of limitations on their rights. However, the period of limitations on the plaintiffs' claims cannot begin to run until they become ripe.

The state seeks to distinguish *Thiboutot* on the ground that the plaintiffs in that case were arguably being deprived of minimal subsistence and support. Thus, the argument runs, the claim of violation of the Social Security Act in *Thiboutot* is more akin to those civil-rights statutes and constitutional provisions that have always concededly come within § 1983. We cannot agree with this distinction. It has some appeal, at least as a legislative matter, but the words of § 1983 as explicitly interpreted by the Supreme Court in *Thiboutot* are clear, and, in addition, we cannot believe that Congress, without saying so, intended for the existence *vel non* of a right of action under § 1983 to depend on the wealth of the plaintiff. Moreover, the right of the long-term care institutions in this case to reimbursement under the Act could very well affect the level of care and treatment received by patients, some of whom are undoubtedly in just as much need as the plaintiffs in *Thiboutot.*

We therefore affirm the District Court's determination that plaintiffs are entitled to an award of fees and costs. The award, however, covered legal work done by counsel for plaintiffs on the entire case, and, under our disposition, plaintiffs are not yet prevailing parties with respect to the fiscal year 1983–84. We therefore believe, see *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), that a remand is necessary for redetermination of fees and costs. On remand, the District Court will reduce the award of fees and costs by the amount it finds reasonably attributable to work by counsel for plaintiffs with respect to the fiscal year 1983–84. We realize that this determination cannot be mathematically exact, and that much, if not most, of the work done by counsel would have been necessary even if only fiscal year 1982–83 had been at issue. The District Court, in its sound discretion, will know what kind of reduction is appropriate in these circumstances. Fees were properly awarded for work pertaining to § 68–721 with respect to both fiscal years, because, defendants not having appealed any issue concerning § 68–721, the District Court's invalidation of that statute is not affected by our holding on appeal that the case is not ripe in regard to the second fiscal year.

V.

We summarize our conclusions. To the extent that it invalidated the application of § 68–720 for the fiscal year 1982–83, the judgment is affirmed. To the extent that it invalidated the application of § 68–720 for the fiscal year 1983–84, the judgment is vacated, and the cause is remanded to the District Court with instructions to dismiss the complaint, without prejudice to the right of any aggrieved party to return to court once final administrative action is complete. The award of fees and costs to counsel for plaintiffs is vacated, and the cause remanded for further consideration consistent with this opinion.

It is so ordered.