820 F.2d 863
 18 Soc.Sec.Rep.Ser. 58, Medicare&Medicaid Gu 36,329
WISCONSIN HOSPITAL ASSOCIATION, a Wisconsin not-for-profit
corporation, et al., Plaintiffs-Appellees, Cross-Appellants,
v.
Linda REIVITZ, Secretary, Wisconsin Department of Health and
Social Services; and Charles P. Smith, Treasurer,
State of Wisconsin,
Defendants-Appellants, Cross-Appellees.
 Nos. 86-1632, 86-1702.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 2, 1986.
Decided May 19, 1987.
 
 F. Thomas Creeron, III, Wis. Dept. of Justice, Madison, Wis., for defendants-appellants, cross-appellees.
 Jon P. Axelrod, DeWitt, Sundby, Huggett, Schumacher & Morgan, S.C., Madison, Wis., for plaintiffs-appellees, cross-appellants.
 Before WOOD and POSNER, Circuit Judges, and WILL, Senior District Judge.*
 POSNER, Circuit Judge.
 
 
 1
 This case, before us for the second time, see 733 F.2d 1226 (7th Cir.1984), involves statutory and constitutional issues arising out of the Medicaid program, 42 U.S.C. Secs. 1396 et seq., under which the federal government picks up part of the tab for expenses incurred by participating states in defraying the medical and hospital costs of the poor. Federal money does not come without strings attached. As a participating state, Wisconsin must adopt a plan approved by the U.S. Department of Health and Human Services that will assure reimbursement of hospitals at rates "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U.S.C. Sec. 1396a(a)(13)(A). Regulations (the validity of which is not challenged) that fill out the statute require the state agency administering the plan to provide both public notice and assurances of compliance with the "reasonable and adequate" requirement "whenever the ... agency makes a significant change in its methods and standards" for determining reimbursement rates. 42 C.F.R. Secs. 447.205 (notice), 447.253 (assurances). In addition, the plan itself "must provide that the plan will be amended whenever necessary to reflect ... material change in any phase of State law, organization, policy or State agency operation." 45 C.F.R. Sec. 205.5; see also 45 C.F.R. Sec. 201.3. The contracts between the hospitals and the state governing the provision of services to Medicaid patients require the state to comply with all state and federal laws governing reimbursement of the costs of these services.
 
 
 2
 The Wisconsin state plan that the federal government has approved provides that a participating hospital shall be reimbursed at the end of the year for the expenses it incurred during the year in treating Medicaid patients. Basically the plan entitles the hospital to the less generous of two alternative methods of calculating those expenses: the hospital's customary charges for the types of service rendered the Medicaid patients, and the "all-inclusive rate per discharge" method, under which a base rate for each service provided is calculated, the rate is then escalated by the inflation in the price of goods and services bought by hospitals during the year, and finally the escalated rate is multiplied by the number of patients to whom the hospital provided each type of service that year. Neither the number of Medicaid patients nor the cost increases due to inflation can be calculated till the end of the year, so the amount due each hospital cannot be finally determined till then either. To ease the hospitals' cash flow problem, the state reimburses the hospitals at interim rates throughout the year, subject to later adjustment. The interim rates are based on estimates of inflation for the year and of the volume of services of various kinds that the hospital will provide its Medicaid patients during the year.
 
 
 3
 On April 30, 1982, Wisconsin passed a statute postponing for three months any reimbursement-rate increases scheduled to take effect between July 1, 1982, and June 30, 1983. Wis.Sess.Laws 1981, ch. 317, Sec. 2033(5). The intended effect apparently was that while the statute was in effect each hospital would be reimbursed for the first three months of its fiscal year (whenever that year began) at the inevitably lower rate (given the rapid escalation in hospital costs) applicable to the hospital's previous fiscal year. The statute was passed and went into effect without any effort by the state to comply with the notice or assurance provisions of federal law applicable to "significant" changes in payment standards and without amending the state plan to reflect a "material change" in state law.
 
 
 4
 In August 1982 the Wisconsin Hospital Association, on behalf of the Wisconsin hospitals that participate in the Medicaid program, brought suit in a federal district court in Wisconsin against the State of Wisconsin, seeking to enjoin the Wisconsin statute on the grounds that it violated the federal Medicaid statute and regulations, impaired the obligations created by the state's contracts with the hospitals, and violated a consent decree entered in July 1982. That decree settled an earlier suit by the Wisconsin Hospital Association challenging the methods used by the state to reimburse hospitals for services to Medicaid patients. The decree required the parties to comply with a stipulation that they had signed in June 1982, in which the state had agreed to comply with the terms of the state Medicaid plan governing reimbursement to the hospitals, as amended on January 1, 1982. The stipulation allows the state to amend the plan, subject to the hospitals' right to contest any proposed amendment, but as we have said the plan has not been amended. The stipulation makes no reference to the statute, passed shortly before (on April 30). Read naturally, the stipulation appears to require the state to adhere to the plan in effect on January 1, 1982, because the plan has not been amended.
 
 
 5
 In January 1983 the district court issued a permanent injunction against enforcement of the Wisconsin statute. This court, dissatisfied with the district court's analysis, reversed the decision and remanded the case for further proceedings. 733 F.2d 1226 (7th Cir.1984). A bench trial followed, at the end of which the district court declared that the state had indeed violated the federal Medicaid regulations, impaired the obligations it had assumed in its contracts with the hospitals, and violated the consent decree. 630 F.Supp. 1015 (E.D.Wis.1986). But the court refused to order any relief, on the ground that the freeze brought about by the statute had expired and that the Eleventh Amendment forbade ordering the state to reimburse the hospitals at the higher rates to which they would have been entitled but for the freeze. The state appeals from the declaration that it violated the hospitals' rights, and the hospitals cross-appeal from the refusal to give them the relief they sought. Meanwhile, although the state has paid the hospitals under the interim rates for the year affected by the statute (July 1, 1982, to June 30, 1983), the end-of-year settling up for that period has not yet taken place.
 
 
 6
 The procedural posture of the appeal and cross-appeal is superficially an odd one. The state purports to be appealing from the grant of declaratory relief, but the district court said that the Eleventh Amendment prevented it from ordering any relief. Any fear by the state that the hospitals might take the district court's declaration that the state has violated the hospitals' rights into state court and use it to collaterally estop the state to deny that it broke its contract with the hospitals is scotched by Green v. Mansour, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), which holds that the Eleventh Amendment bars federal courts from issuing declarations usable only to obtain a damage judgment against a state in state court.
 
 
 7
 But there is more to the state's appeal than this. Although the district judge thought he was giving the hospitals nothing, he was wrong. To see this requires distinguishing between those hospitals whose fiscal years began between the date when the Wisconsin statute went into effect and the date when the district judge issued his original injunction, and those hospitals (roughly a third of the members of the Wisconsin Hospital Association) whose fiscal years began between the date of the injunction and the date the freeze ended. The former group was denied reimbursement at the interim rates required by the plan then in effect (but modified by the statute). This is the group that lost in the district court. Its members are seeking a money judgment against the state, and the court held that such a judgment would violate the Eleventh Amendment. If these were the only plaintiffs, the state could not appeal. But because of the injunction (though it was later vacated), because interim rates are paid as the services are provided, and because the statute affects only the first three months of a hospital's fiscal year, the state reimbursed the members of the second group as if there had been no freeze. While for a hospital whose fiscal year began on July 1 the whole effect of the statute was felt before the district judge issued his injunction in January, if the hospital's fiscal year began after the date of the injunction (as is true by definition of the second group of hospitals) the injunction kept the statute from affecting the hospital's interim reimbursement, since the statute was not intended to affect the previous fiscal year. The hospitals in this group do not seek a money judgment; they just want the validity of the injunction confirmed, which was accomplished by the judge's declaration, following our remand, that the freeze was illegal.
 
 
 8
 The vacating of the injunction for a time by this court has no effect on the Eleventh Amendment issue. As the state did not, while the injunction was lifted, recapture any of the amounts it had paid when the injunction was in effect, the hospitals are not faced with having to get money out of the state treasury. Unless and until overturned, the judge's declaration (in the order now under review) that the freeze was invalid will prevent the state from getting back any money that it paid the hospitals under the original injunction; if they try to do that the hospitals will ask the judge to convert his declaration into an injunction. The declaration appears on the separate judgment form that the judge entered in compliance with Fed.R.Civ.P. 58. It is a real declaratory judgment. All this is clear enough even though the judge, having apparently forgotten about the second group of hospitals, didn't realize that he had given the plaintiffs a substantial remedy.
 
 
 9
 The state, while happy not to have to pay money to the first group of hospitals, is unhappy at being blocked (by the declaration) from collecting money from the second group, and therefore appealed. And it really is blocked, as we have just seen. So the appeal is proper, and the cross-appeal timely, and we come to the merits, where there are only two issues that we need to discuss. The first is whether the Eleventh Amendment blocks the first group of hospitals from getting additional reimbursement if the freeze was illegal. The second issue (and the only one, so far as the second group of hospitals is concerned) is whether the freeze was contrary to the Medicaid regulations and therefore illegal.
 
 
 10
 The Eleventh Amendment has been interpreted to forbid a federal court to enter judgment against a state, with a variety of exceptions not necessary to dwell on here. See In re McVey Trucking, Inc., 812 F.2d 311 (7th Cir.1987). On the other hand a judgment enjoining state officials from violating the plaintiff's federal rights is not within the bar of the Eleventh Amendment. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). And this suit is, nominally at least, against the responsible state officials rather than the state itself. The nominal is also the real in the case of the second group of hospitals. All they want is an order restraining the defendants (and their successors--the practical consequence of suing them for injunctive relief in their official rather than personal capacities, as the plaintiffs have done) from forcing the hospitals to give back the money reimbursed under the district court's injunction. The declaration that the judge issued is, effectively, the order these hospitals sought.
 
 
 11
 But the hospitals in the first group want the court to order the state to reimburse them for the fiscal year that began on or after July 1, 1982, at the rates that would have prevailed but for the statute which the Wisconsin legislature enacted on April 30 of that year. By preventing escalation for the first three months of the fiscal year the statute reduced the amount of reimbursement to which these hospitals would otherwise have been entitled.
 
 
 12
 The hospitals argue that because no final settling up for the year has been made, the judgment they seek is prospective only: a direction to the defendants to ignore the April 30 statute in deciding how much money to pay the hospitals. But this is a misuse of the word "prospective." A suit under Ex parte Young envisages a situation in which state officials are being told in effect to leave the plaintiff alone. The relief sought is against the officials; the state treasury is not directly affected. But if the officials retain the money claimed by the plaintiff and deposit it in the state treasury--which is the situation with regard to the first group of hospitals (those that claim they were not reimbursed fully)--a suit asking the officials not to interfere with the plaintiff is of no use to him. What he needs is payment. And here it is sought from the state treasury; for this suit is against the state officials in their official capacities, which means, when pecuniary relief is sought, against the state itself. Kentucky v. Graham, 473 U.S. 159, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); Duckworth v. Franzen, 780 F.2d 645, 649 (7th Cir.1985). A suit with such an object is squarely within the scope of the Eleventh Amendment. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Florida Dept. of Health & Rehabilitative Services v. Florida Nursing Home Ass'n, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (per curiam). During a hospital's fiscal year that began between July 1, 1982, and the issuance of the injunction in January 1983, the hospitals in our first group rendered services to Medicaid patients for which they want to be paid at a higher rate than the state wants to pay them.
 
 
 13
 The fact that the exact amount which the hospitals seek has not yet been computed has no significance. Suppose the state takes a person's car without due process of law, sells it, and pockets the proceeds. If the owner sues the state for the value of the car--as distinct from suing in their personal capacities the state officers who took it--the suit is subject to the Eleventh Amendment. Now suppose the state takes the car and tells the owner that at the end of the year it will pay him its estimate of the car's value but that the estimate cannot exceed one-half of market value. If the owner sues before the year is up, seeking the full value, he cannot avoid the Eleventh Amendment by arguing that until then the relief he seeks is merely prospective--an order to pay market value, rather than the state's inadequate concept of value.
 
 
 14
 This case would be different if it had been brought, and a valid injunction obtained, before July 1, 1982, that is, before the hospitals began to render the services subject to the April 30 statute. The hospitals would then not be seeking additional reimbursement for services already rendered. The injunction would have financial implications, as most injunctions do, but it would be a real injunction; it would not be an order to pay, even an order to pay an unliquidated amount. Such an injunction would have placed all the hospitals in the position occupied by the second group of hospitals, those whose fiscal years began after the district judge issued his original injunction and who therefore received reimbursement at the rate they desired.
 
 
 15
 But we think the first group of hospitals has a solid alternative ground for avoiding the Eleventh Amendment for all but three weeks of the relevant fiscal year. Back on July 21, 1982, the district court had entered a consent decree settling an earlier suit by the Wisconsin Hospital Association challenging the methods by which the state was reimbursing the members of the Association for services to Medicaid patients. The decree ordered the state not to deviate from the plan in force the previous January 1 (as amended) without complying with the procedural requirements set forth in the regulations. The decree might seem to raise problems under Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984), which holds that federal courts do not have jurisdiction to coerce state officials to obey state law; but it does not, because the federal regulations make compliance with the state plan (until amended, or unless the deviation is insignificant) a federal duty. The decree was prospective in effect, based on federal law as we have just noted, and within the jurisdiction of the district court to enter notwithstanding the Eleventh Amendment or any other limitation on federal jurisdiction.
 
 
 16
 In the judgment now under review the district court found that the state had violated the consent decree. If this finding is correct, the Eleventh Amendment is no bar to ordering the state to reimburse the hospitals at the higher rate they seek, for the period (49 of the 52 weeks beginning on July 1, 1982) during which the consent decree was in effect. Against a state that violates a valid federal court decree the court has the power to issue any order necessary to enforce the decree, including an order to pay. Hutto v. Finney, 437 U.S. 678, 690-91, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978); Rodriguez v. Swank, 496 F.2d 1110 (7th Cir.1974). Whether one calls such an order one of civil contempt or, as we would prefer out of comity to characterize it, an equitable supplement to the consent decree, it is within the power of the federal court to make.
 
 
 17
 We do not suggest that by consenting to the original decree the defendants waived the state's rights under the Eleventh Amendment. The decree did not engage the Eleventh Amendment. The decree settled a genuine, noncollusive case that was within the exception to the Eleventh Amendment that Ex parte Young created, and it was a proper settlement that didn't violate anybody's rights. Compare Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984); Dunn v. Carey, 808 F.2d 555, 560 (7th Cir.1986). Nor did the order that we have called an equitable supplement expand the scope of the decree, as in Lelsz v. Kavanagh, 807 F.2d 1243, 1252 (5th Cir.1987). If it did, the expanded portion might be within the scope of the Eleventh Amendment. But all the order did was coerce (or attempt to coerce) compliance with the decree; and, as we have said, if a decree is valid an order enforcing it is not barred by the Eleventh Amendment. A fine for contempt, payable by the defendants in their official capacities (and therefore by the state itself, as we said), would have been within the power of the district court. See Hutto v. Finney, supra, 437 U.S. at 690-92, 98 S.Ct. at 2573-74.
 
 
 18
 The state argues that by signing the consent decree after the statute was passed, the hospitals waived any argument that the statute violated the state plan of reimbursement. We disagree. The statute violated the plan and hence the decree if but only if it made a significant ( = material) change in the plan (if it made such a change, the plan had to be amended and public notice and assurances to HHS given, and none of these things was done), a matter unclear when the statute was passed and the decree signed. By signing the decree the state made the enforceability of its statute depend on a determination by the federal courts whether the statute made a significant or material change in the plan.
 
 
 19
 All that remains to be decided is whether the change in the plan that the Wisconsin statute brought about was "significant" or "material" (in the context of the Medicaid regulations the two words appear to be synonyms), in which event the enforcement of the statute violated the decree. The district court found that the Wisconsin statute would reduce the hospitals' reimbursements for the fiscal year affected by it by an average of 1.8 percent. This is only an estimate; the final reckoning for the year has not been made, and the state in its reply brief challenges its accuracy. But the challenge is untimely. If the state wanted to make an issue of the estimate, it had to do so in its opening brief. It could not raise an issue for the first time in its reply brief. Shlay v. Montgomery, 802 F.2d 918, 922 n. 2 (7th Cir.1986). There was testimony that a 1.8 percent reduction would place severe financial pressures on some hospitals; this is believable, given the well-known financial problems of the nation's hospitals and the fact that Medicaid reimbursement is skimpy at best. The question of significance or materiality, like most legal characterizations, we deem one of fact, cf. TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976); Mucha v. King, 792 F.2d 602, 605 (7th Cir.1986), hence governed by the clearly-erroneous rule; and the state has not persuaded us that the district judge clearly erred in finding a 1.8 percent reduction in reimbursements for Medicaid services to be significant and material in the circumstances. So the state violated the Medicaid regulations (and thus the consent decree) when it let the April 30 statute go into effect without amending the state plan and without providing public notice or the requisite assurances that the modified payment system would cover the reasonably incurred costs of the hospitals.
 
 
 20
 Since the state violated the consent decree, the hospitals in the first group are entitled to a suitable remedial order, specifically an order directing the state to reimburse the hospitals for the period July 21, 1982, to June 30, 1983, as if the April 30 statute had never been passed. The consent decree entitled the hospitals to be reimbursed in accordance with the plan; the statute unlawfully interfered with this entitlement. An order directing the hospitals to be reimbursed as if the statute had never been passed will not only place them in the position they would have occupied but for the state's violation (by passing the statute without amending the plan) of the Medicaid regulations, but also place them on a par with the hospitals in the second group, which by virtue of the district judge's original injunction were never subjected to the statute.
 
 
 21
 We may seem to have forgotten the plaintiffs' alternative ground, that by violating the consent decree the state also impaired the obligations of its contracts in violation of the Constitution. But what difference does it make how many violations of law the state committed? It might seem to make the following difference: If the state violated the hospitals' civil rights (within the broad meaning which the term bears in 42 U.S.C. Sec. 1983), then the state would be liable for the hospitals' attorneys' fees, by virtue of 42 U.S.C. Sec. 1988. See Hutto v. Finney, supra, 437 U.S. at 693-700, 98 S.Ct. at 2574-78. But, as Hutto also makes clear, the same relief is available under the district court's inherent power to impose sanctions for violation of its decrees. See id. at 689-93, 98 S.Ct. at 2572-74. Moreover, if the plaintiff has a substantial constitutional ground, but prevails on an alternative nonconstitutional ground, he can still be awarded attorney's fees under section 1988, Smith v. Robinson, 468 U.S. 992, 1006-07, 104 S.Ct. 3457, 3465, 82 L.Ed.2d 746 (1984), provided the grounds are closely related factually, Lenard v. Argento, 808 F.2d 1242, 1246 (7th Cir.1987)--which they are here.
 
 
 22
 We are not eager to decide constitutional questions unnecessarily. We cannot see what practical difference it would make to the parties if we decided that the state had impaired the obligations of its contracts with the hospitals, and we therefore decline to rule on the question.
 
 
 23
 The declaratory judgment is affirmed; but the case is remanded with directions to enter a money judgment in favor of the first group of hospitals, in accordance with this opinion.
 
 
 24
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH DIRECTIONS.
 
 
 
 *
 Hon. Hubert L. Will, Senior District Judge for the Northern District of Illinois, sitting by designation