## ST. TAMMANY PARISH HOSPITAL SERVICE DISTRICT, etc., et al.

### v.

## DEPARTMENT OF HEALTH AND HUMAN RESOURCES, etc., et al.

### Civ. A. Nos. 86–5517, 86–4926.

United States District Court, E.D. Louisiana.

Jan. 12, 1988.

Normand F. Pizza, Ricardo M. Guevara, Brook, Morial, Cassibry, Fraiche & Pizza, New Orleans, La., for plaintiffs.

James A. Cobb, Jr., Emmett, Cobb, Waits & Kessenich, New Orleans, La., for United Medical Center, Inc.

Sidney W. Hall, K. Lane Ardoin, Baton Rouge, La., for Dept. of Health and Human Resources.

ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on the plaintiffs' motion for summary judgment

and the defendants' cross-motions to dismiss and for summary judgment. For the following reasons, the Court grants the plaintiffs' motion in part and denies it in part, denies the defendants' cross-motion to dismiss, and grants the defendants' cross-motion for summary judgment in part and denies it in part.

Amid the appalling, ever-growing deficits of the federal and state governments, beneficiaries of public largesse in Louisiana are fighting hard to keep their share from dwindling. The debates are primarily, as they should be, before the legislative and executive branches. Courts should be wary of hindering attempts to cure these fiscal crises, but must, at times, step in, when it is shown that an adopted attempt is illegal. Here is such a case.

Several hospitals complain about a recent cut by Louisiana in their Medicaid reimbursements for inpatient hospital services. Specifically, thirteen New Orleans-area hospitals are asking the Court (1) to permanently enjoin Louisiana's Department of Health and Human Resources, Office of Family Security ("DHHR") from enforcing its rule uniformly reducing interim Medicaid reimbursement rates for hospitals by 10%, without first complying with federal law and regulation, (2) to declare the rule void under both federal and state law, and (3) to grant attorney's fees. As explained below, the Court finds all requests well-founded, except the one to declare the rule void under Louisiana state law.

## I. BACKGROUND

Under the Medicaid program, the federal government picks up part of the tab for expenses in defraying hospital costs of the poor. Like most federal money, this money comes with strings attached.[1] Having elected to participate in the program, Louisiana must abide by the federal statutes and regulations that create and govern the Medicaid program.[2]

Among other things, Louisiana must provide at least 40% of the non-federal share of the expenses.[3] Further, it must adopt a federally approved plan [4] assuring that hospitals will be reimbursed at rates "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities."[5] Federal regulations (whose validity is not challenged here) require the state agency administering the program (here, the DHHR)[6] to provide both public notice [7] and assurances [8] of compliance with this reasonable-and-adequate requirement whenever the agency makes a "significant change" in payment methods and standards. In addition, the plan itself "must provide that the plan will be amended

1. *Wisconsin Hospital Ass'n v. Reivitz,* 820 F.2d 863, 864 (7th Cir.1987).

2. *Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). The statutes are found at Title XIX of the Social Security Act as amended, 42 U.S.C. §§ 1396–1396s, the regulations at 42 C.F.R. pts. 430–456 (1986).

3. 42 U.S.C. § 1396a(a)(2).

4. Specifically, the plan must be approved by the Health Care Financing Administration ("HCFA"), which is part of the United States Department of Health and Human Services ("HHS").

5. 42 U.S.C. § 1396a(a)(13)(A); *see* 42 C.F.R. § 447.250(a). This language, sometimes referred to as the Boren Amendment, was added as part of the Omnibus Reconciliation Act of 1980, Pub.L. No. 96–499, tit. IX, § 962(a), 94 Stat. 2599, 2650; *see also id.* § 905(a), 94 Stat. at 2618. The subparagraph, which was first added to the Social Security Act by the Social Security Amendments Act of 1972, Pub.L. No. 92–603, § 249(a)(2), 86 Stat. 1329, 1426 (then codified at 42 U.S.C. § 1396a(a)(13)(E) (1976)), was further amended in 1981, among other reasons, to cover hospitals. Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, tit. XXI, § 2173(a)(1)(B)–(C), 95 Stat. 357, 808–09. The only other change to the subparagraph was a technical amendment. Deficit Reduction Act of 1984, div. B, tit. III, § 2373(b)(3), 98 Stat. 494, 1111. For more on the 1980 and 1981 amendments, see *Mississippi Hospital Ass'n v. Heckler,* 701 F.2d 511, 518, 520 (5th Cir.1983).

6. Federal law requires that a single state agency administer or supervise the program. 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10. By statute, Louisiana has designated the DHHR as the proper agency. La.Rev.Stat.Ann. §§ 36:251, 36:258(C) (West 1985).

7. 42 C.F.R. § 447.205.

8. *Id.* § 447.253(a).

whenever necessary to reflect ... material change in any phase of State law, organization, policy or State agency operation."[9]

Louisiana's present HCFA-approved Medicaid plan, which follows the payment procedures for Medicare,[10] provides for interim reimbursement payments to hospitals for inpatient hospital services. These payments are based on a per diem rate initially calculated by determining (1) allowable per diem costs for the previous year along with (2) an appropriate factor for applying these former costs over the current year.[11] Under the plan, a hospital may, with proper documentation, appeal to the DHHR to have its initial interim reimbursement rate increased for the remainder of the year; similarly, the DHHR may determine that the interim rate should be decreased. At year end, when the final, actual costs are audited and determined, a payment adjustment is made to correct any differences between the year's actual costs and the calculated, target costs paid out.[12]

On October 29, 1986, the DHHR made a "Declaration of Emergency" to announce the following Rule:[13]

**Rule**

Effective for Medicaid admissions on or after November 1, 1986, the Medical Assistance Program shall reduce hospital interim per diem rates by 10 percent.

**Regulatory Exception**

Implementation of this rule is dependent on the approval of the Health Care Financing Administration (HCFA). Disapproval of the change by HCFA will automatically cancel the provisions of this rule and current policy will remain in effect.

The DHHR has not sought HCFA approval of the Rule, nor has it amended its plan to reflect the Rule. Apparently, however, the DHHR has already implemented the 10% reduction, notwithstanding the express "Regulatory Exception" to the Rule. Only one plaintiff has sought administrative appeal.[14]

The following table indicates for each plaintiff (1) the per diem rate it would presently receive if the 10% reduction were not applied, (2) the per diem rate to which the hospital believes it is presently entitled, and (3) the per diem rate to which the DHHR believes the hospital would be entitled if it sought DHHR administrative review, but to which the DHHR would still apply a 10% reduction:

---

**9.** 45 C.F.R. § 205.5 (1986); *see also id.* § 201.3.

**10.** This plan was approved on November 8, 1984. The Medicare statutes are found at Title XVIII of the Social Security Act as amended, 42 U.S.C. §§ 1395–1395zz, the Medicare regulations at 42 C.F.R. pts. 405–421 (1986). The Medicaid regulations on reimbursement rates for inpatient hospital services are found at 42 C.F.R. §§ 447.250–.256.

**11.** Within 90 days after the previous fiscal year, a cost report must be submitted to a fiscal intermediary chosen by the hospital and approved by the DHHR. From the settlement between the hospital and the DHHR on the cost report, the initial interim rates for the current year are determined.

**12.** For discussion of similar interim Medicare payment procedures, which Louisiana's Medicaid program follows, see *Wisconsin Hospital,* 820 F.2d at 864–65; *Sunshine Health Systems, Inc. v. Bowen,* 809 F.2d 1390, 1391 (9th Cir.1987); *V.N.A. of Greater Tift County, Inc. v. Heckler,* 711 F.2d 1020, 1022 (11th Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984); *United States v. Hughes House Nursing Home, Inc.,* 710 F.2d 891, 893 (1st Cir.1983); *Metropolitan Medical Center & Extended Care Facility v. Harris,* 693 F.2d 775, 779 (8th Cir.1982).

**13.** 12 La.Reg. 758 (Nov. 20, 1986). Subsequently, the DHHR published a Notice of Intent, 12 La.Reg. 865 (Dec. 20, 1986), and adopted a final Rule, 13 La.Reg. 92 (Feb. 20, 1987), which has the same terms as the Emergency Rule. Whether the DHHR considers itself to be operating under the Emergency Rule or the final Rule, the effect is the same. Accordingly, the Court's comments on the Rule apply equally to the Emergency Rule and the final Rule, except that Part II(C) below applies only to the Emergency Rule.

**14.** It has not been revealed to the Court which plaintiff that is and what the outcome of the appeal was.

| Plaintiff | (1) | (2) | (3) |
|---|---|---|---|
| St. Tammany General Hospital | $301.55 | $378.00 | $368.09 |
| Slidell Memorial Hospital | 349.66 | 485.33 | 345.98 |
| East Jefferson General Hospital | 294.23 | 485.70 | 363.90 |
| AMI St. Jude | 999.99 | 1,306.33 | 947.20 |
| Pendleton Memorial Methodist Hosp. | 628.46 | 772.16 | 628.46 |
| Highland Park Hospital | 465.31 | 592.86 | 409.32 |
| United Medical Center New Orleans | 450.00 | 598.51 | 409.71 |
| Southern Baptist Hospital | 472.78 | 724.83 | 472.78 |
| Mercy Hospital of New Orleans | 530.91 | 631.58 | 544.69 |
| Hotel Dieu Hospital | 520.12 | 613.97 | 520.12 |
| Seventh Ward General Hospital | 391.66 | 508.36 | 443.35 |
| Lakeside Hospital | 396.68 | 679.53 | 405.08 |
| Tulane Medical Center | 771.68 | 916.29 | 771.68 |

Aggrieved, the thirteen plaintiffs have brought this action against the DHHR, Sandra Robinson (the State Health Officer and Secretary of the DHHR), and Marjorie Stewart (Assistant Secretary of the DHHR and Director of the Office of Family Security) and now seek summary judgment.

## II. LAW

### A. *Violation of Federal Law*

The critical issue for these motions is whether the 10% reduction in interim reimbursements constitutes a "significant change" in reimbursement methods [15] or a "material change" in "State ... policy or State agency operation." [16] If it is, then the state has violated federal law and the plaintiffs win; if it is not, then the plaintiffs' claim must fail.

The essence of the defendants' position is simply put: they believe, or at least must be held to argue, that they may make *any* change in interim payments as long as they make *no* change in the methods for determining and making the year-end, final reimbursement payments to the hospitals. The essence of its flaw is simply put as well: like most businesses, hospitals depend on sufficient cash flows throughout the year in order to survive; the effects of a 10% reduction in money, even if felt only until each year-end cost settlement, cannot be ignored.[17]

The defendants do not argue that the 10% reduction is not a significant change; they simply argue that because the state plan does not mention interim payments, there is no need for plan amendments or DHHR assurances for HCFA approval.

The defendants misread the federal regulations. 42 C.F.R. § 447.253 (on changes in state plans) does not vary depending on what the particular terms of the state plan include; instead, it requires state assurances for HCFA approval for a significant change in state reimbursement methods, whatever those methods may be. The DHHR's previous omission cannot condone its present commission.

As another angle for this futile argument that no plan amendment is necessary, the defendants characterize the 10% Rule as a change in operation procedure, and not in policy. But 45 C.F.R. § 205.5 requires amendment for "material change in *any* phase of State policy ... or *State agency operation*." Further, the very words (viz., "policy") used in and the tenor of the Declaration of Emergency announcing the 10% Rule discredit the defendants' present characterization. In short, whether the reduction be policy or operation change, a plan amendment—with HCFA approval—is necessary. For it is without doubt that the 10% reduction is a "material change" if only in "operation."

The parties also dispute whether the 10% reduction could be "reasonable and ade-

15. 42 C.F.R. § 447.253.

16. 45 C.F.R. § 205.5.

17. *See Wisconsin Hospital*, 820 F.2d at 865, 869.

quate." Resolution of this dispute is unnecessary for judgment in this case. The Court need not decide if the HCFA *could* approve the 10% Rule; it need only decide whether the State can enforce it without receiving HCFA approval. The whole rationale for federal administrative review of state agency action with notice to participating hospitals is to let those with more expertise in this area than the Court first address the merits of any dispute; dictum is unnecessary and may be misinformed.

■ Because there can be no genuine dispute that a 10% reduction in interim payments is a *material* change in DHHR operation (requiring state plan amendment, which in turn requires HCFA approval), it is established that, contrary to the Supremacy Clause,[18] the defendants have violated the federal regulations requiring HCFA approval.

The defendants' citation to the federal regulations on *Medicare*[19] is misguided. While a state may adopt a plan that follows Medicare procedures on reimbursements to hospitals, as Louisiana has done here, a state participating in the Medicaid program remains subject to the *Medicaid* regulations, including those on approval and assurances. Further, the Medicare regulations are complementary to and not contradictory to the Medicaid regulations.

The defendants argue that, without the reduction, Louisiana may be subject to the newly enacted federal regulations on a state's overpayment to hospitals. First, this possibility does not excuse the state from the federal regulations on making changes; if the State is worried, it should

amend its plan to resolve its worry. Second, it does not even appear that the new regulations apply here, for these regulations specifically state that if the excess paid to a hospital is recovered by adjusting its later per diem payments, then the excess is deemed not an overpayment.[20]

The Court stresses the limited extent of its holding. The Court does not hold that the DHHR may not under any circumstances reduce a hospital's interim per diem reimbursement payments by 10% from the amount it is presently obliged to pay the hospital; the DHHR is not precluded from determining under its present *HCFA-approved* plan that a particular hospital's interim reimbursement rate should be decreased from its present rate. Nor does the Court hold that a uniform 10% reduction of interim rates to all hospitals is invalid in all circumstances; while there may be few circumstances in which such an across-the-board action would satisfy the adequate-and-reasonable assurances requirement as to each hospital, the Court cannot say such circumstances will never occur.[21]

### B. *Affirmative Defenses*

While the defendants' violation of federal law is established, the Court must address the affirmative defenses the defendants raised in their answer.

#### 1. *Lack of Standing*

■ The defendants argue, without citation, that the plaintiffs lack standing because they are political subdivisions of the state and the "State can't sue itself." At oral argument, the Court asked who would

18. U.S. Const. art. 6, cl. 2.

19. 42 C.F.R. pt. 413 (on reasonable cost reimbursement).

20. Reg. 2853.1, *reprinted in* Attachment No. 2 to Defendants' Memorandum.

21. The plaintiffs refer the Court to *Wisconsin Hospital*, 820 F.2d 863, and to *Washington State Hospital Ass'n v. State of Washington*, 1987 Medicare & Medicaid Guide (CCH) ¶ 36,352, at 14,345 (W.D.Wash.1987), for the proposition that a uniform reduction in interim per diem payments can never be valid. In *Wisconsin Hospital*, the Seventh Circuit affirmed the district court's finding after a bench

trial that Wisconsin's three-month freeze on any increase in interim reimbursement rates was invalid; the court specifically noted the limited nature of its review; the district court had not, under the circumstances of that case, violated the clearly-erroneous rule. *See* 820 F.2d at 869. In *Washington State Hospital*, the district judge granted summary judgment declaring a 23.7% uniform reduction in reimbursement rates to be invalid because it found that the state had not examined the effect of the reduction on each participating hospital. *See* 1987 Med.Guide at 14,347. In sum, neither case should be read to announce a *per se* rule.

champion the plaintiffs' cause if they were not permitted to sue. Not surprisingly, counsel for the defendants were at a loss for words. This exchange alone should illustrate the weakness of the defendants' position.

But the defense fails for two further reasons. First, the argument does not constitute a valid defense under Louisiana law; suits by political subdivisions of the State against the State are common and are allowed.[22] Second, even if this were a valid defense, the defendants would not be entitled to dismissal of the *entire* case, for not all the plaintiffs are political subdivisions.[23]

### 2. *Failure to Join Indispensable Parties*

■ The defendants contend that the HCFA and the HHS are indispensable parties because restoration of the 10% per diem cuts could theoretically result in overpayments to hospitals. Likewise, this defense is no good. First, no one is challenging the validity of any federal law or regulation. Second, the HCFA did not approve the 10% Rule, nor has its approval been sought. Third, the permanent injunction and declaratory relief sought do not draw into question any HCFA or HHS decision with respect to Louisiana's program.[24] Finally, as to the concern of overpayment, the Court reiterates that the DHHR is not

precluded from decreasing a hospital's interim per diem rates, provided it makes the findings and follows the steps required under its present HCFA–approved plan.

### 3. *Failure to State a Cause of Action*

The defendants assert that the plaintiffs have failed to state a cause of action upon which relief may be granted, but offer no argument why. It is unnecessary to determine whether the Medicaid statutes and regulations themselves create a private cause of action for the hospitals against the DHHR as the administering state agency, for 42 U.S.C. § 1983 creates an independent cause of action for the defendants' alleged conduct.[25]

### 4. *Failure to Exhaust Administrative Remedies*

■ In their motion to dismiss for prematurity, the defendants argue that the plaintiffs have failed to avail themselves of the DHHR administrative procedures by which hospitals may appeal to the DHHR for an increase in their per diem reimbursement rates. But the defendants admit "that whatever per diem rate is established as a result of the administrative appeal will still be reduced by ten (10%) percent pursuant to the emergency rule" and deny "that if a hospital's per diem rate is increased

---

**22.** *See, e.g., City of New Orleans v. State,* 443 So.2d 562 (La.1983); *City of New Orleans v. State,* 364 So.2d 1020 (La.1978).

**23.** For example, Southern Baptist Hospitals, Inc. and the Administrators of the Tulane Educational Fund, d/b/a Tulane Medical Center are not political subdivisions, but instead are not-for-profit corporations.

**24.** After oral argument, the defendants submitted an affidavit from Jack Steven Luehrs of the HCFA regional office in Dallas. Among other things, he stated: "I have been asked ... whether Federal approval is required before a State can make a change in interim payment rates. The answer is no." As the 10/16/87 letter from counsel for plaintiffs shows, this statement is much more limited in scope than the issue before the Court and thus is of little use.

Louisiana's present HCFA–approved plan provides for adjustments in interim payment rates without needing any HCFA approval, as all par-

ties concede. But the issue before the Court is not whether HCFA approval is necessary for each and every adjustment that may be made, but whether the 10% Rule, which directs the DHHR to follow procedures, or operation, different from the HCFA–approved plan, requires HCFA approval.

**25.** *Nebraska Health Care Ass'n v. Dunning,* 778 F.2d 1291, 1295–96 (8th Cir.1986) (finding a cause of action under § 1983, thus permitting plaintiffs to recover attorney's fees, where the plaintiffs attacked a state statute placing a limitation on increases in hospital payments under Medicaid), *cert. denied,* — U.S. —, 107 S.Ct. 947, 93 L.Ed.2d 996 (1987); *see Maine v. Thibodot,* 448 U.S. 1, 4–8, 100 S.Ct. 2502, 2503–06, 65 L.Ed.2d 555 (1980) (on the AFDC portion of the Social Security Act, of which the Medicaid statute is also a portion); *Yapalater v. Bates,* 494 F.Supp. 1349, 1357–58 (S.D.N.Y.1980), *aff'd per curiam on opinion below,* 644 F.2d 131 (2d Cir. 1981), *cert. denied,* 455 U.S. 908, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982).

due to an administrative appeal such increased per diem rate will not be thereafter reduced by ten (10%) percent as required by the emergency rule."[26] In short, administrative appeal would afford the plaintiffs no possibility of relief from the emergency rule.

Finally, even if administrative appeal would in theory afford proper relief, a dismissal of the entire matter would be improper at this time, for the defendants admit that at least one plaintiff has sought such appeal but have not shown that such appeal has afforded this one plaintiff proper relief.[27]

### C. Violation of State Law

Among the relief the plaintiffs seek is a declaratory judgment that the procedure chosen by the DHHR to promulgate the Emergency Rule violated Louisiana's Administrative Procedure Act.[28] For the following four reasons, the Court denies the plaintiff's request.

■ First, such a declaratory judgment is unnecessary to afford the plaintiffs the substantive relief they seek. Once the defendants are permanently enjoined from enforcing the Emergency Rule and the rule is declared void under federal law, the plaintiffs achieve what they seek: reinstatement of the rates cut by the rule. Second, under the *Burford*-type abstention

doctrine, in order to avoid unnecessary interference with state activities, federal courts should abstain from declaring that a state agency has violated a state law.[29] Such relief is best obtained from state courts. Third, the plaintiffs do not allege or argue that the violation of Louisiana's Administrative Procedure Act amounts to a deprivation of due process or equal protection under the federal constitution. Finally, with the promulgation of the final Rule, the Emergency Rule may no longer apply.[30]

### D. Attorney's Fees

■ *Maine v. Thiboutot*[31] and *Nebraska Health Care Association v. Dunning*[32] clearly establish that plaintiffs alleging federal violations of the Medicaid program may request attorney's fees under the Civil Rights Attorney's Fees Award Act of 1976.[33] Because the plaintiffs in this action have been successful in their claims, they are entitled to recover their attorney's fees.[34]

Accordingly, on or before January 20, 1988, the plaintiffs shall submit a memorandum with supporting documentation conforming with Local Rule 21.16 and taking into account the twelve guidelines listed in *Johnson v. Georgia Highway Express, Inc.*[35] Any memoranda in opposi-

---

**26.** Plaintiffs' Motion for Summary Judgment, exh. 8 (request for admission nos. 3 & 5); *id.* exh. 9 (answers thereto).

**27.** The burden of substantiating the need for an increase in interim per diem rates is normally on the hospital. *V.N.A. of Greater Tift County,* 711 F.2d at 1022; *Gosman v. United States,* 215 Ct.Cl. 617, 573 F.2d 31, 36 n. 4 (1978). But the plaintiffs would have met their burden tor defeating a summary judgment dismissal. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Phillips Oil Co. v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987). For with (1) the data requested from the parties (viz., the per diem rates to which the parties believe each hospital is entitled) and explanations offered for the data in the parties' post-hearing correspondence to the Court and (2) no party's having revealed the identity of this one plaintiff, a genuine dispute of a material fact would still exist to preclude dismissal.

**28.** La.Rev.Stat.Ann. 49:953(B)(1) (West 1987) (on adoption of emergency rules).

**29.** *See generally* C. Wright, *Federal Courts* 222 (3d ed.1976).

**30.** *See infra* note 13.

**31.** 448 U.S. 1, 9–11, 100 S.Ct. 2502, 2506–08, 65 L.Ed.2d 555 (1980).

**32.** 778 F.2d 1291, 1295–96 (8th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 947, 93 L.Ed.2d 996 (1987).

**33.** 42 U.S.C. § 1988 (1982).

**34.** *See generally Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (absent special circumstances, successful civil rights plaintiffs should recover attorney's fees); *see also Brown v. Culpepper,* 559 F.2d 274, 277–28 (5th Cir.1977).

**35.** 488 F.2d 714, 717–19 (5th Cir.1974).

tion shall be submitted on or before January 27, 1988. A hearing on the award of attorney's fees is set for Wednesday, February 3, 1988, at 10 a.m.

## III. CONCLUSION

Because the Court determines that the defendants have violated federal law and have not raised any valid defenses, the Court denies the defendants' motion to dismiss and grants the plaintiffs' motion for summary judgment (1) permanently enjoining the defendants from enforcing the Emergency Rule and the final Rule without first complying with federal law and (2) declaring the Emergency Rule and the final Rule unconstitutional and void under federal law in violation of the Supremacy Clause. Because the Court abstains from determining whether defendants have violated state law, the Court grants the defendants' motion for summary judgment as to the alleged violation of state law. The Clerk of Court is directed to enter final judgment forthwith accordingly.[36] The parties are to submit documentation on attorney's fees, as directed in Part II(D) above.

---

**36.** *See Cobb v. Miller,* 818 F.2d 1227, 1235–37 (5th Cir.1987). *See generally* L. Bartell, *Federal Court Awards of Attorneys' Fees* ¶¶ 2.3–.4, at 184–86 (rev. Oct. 1987) (discussing when final judgment may be entered before the amount of attorney's fees is determined).