Donald H. JOHNSON, et al., Plaintiff,

v.

Michele K. GUHL, Commissioner, State of New Jersey, Department of Human Services, et al., Defendants.

No. CIV. A. 99–5403(DMC).

United States District Court, D. New Jersey.

Sept. 24, 2001.

Shirley B. Whitenack, Schenck, Price, Smith & King, LLP, Morristown, NJ, for Plaintiffs.

Edwin C. Eastwood, Jr., Edwin C. Eastwood, North Bergen, NJ, Donald L. Berlin, Berlin, Kaplan, Dembling & Burke, Morristown, NJ, Daniel W. O'Mullan, Morris County Counsel, Whippany, NJ, Juan

Carlos Fernandez, Office of the County Counsel, Newark, NJ, for Defendants.

## AMENDED OPINION

CAVANAUGH, District Judge.

This matter comes before the Court on Plaintiffs' motion for declaratory judgment and injunctive relief. This case involves a challenge by Plaintiffs of certain provisions of the New Jersey Medicaid plan governing Medicaid eligibility for coverage of the cost of long-term care as inconsistent with federal Medicaid law. Through this application Plaintiffs essentially seek declaratory judgment and injunctive relief to the following effect: (1) that the Court declare that the policy adopted by the Division of Medical Assistance and Health Services ("DMAHS") regarding the treatment of Community Spouse Annuity Trusts ("CSAT") at issue that resulted in the denial of Medicaid eligibility, is unenforceable and enjoin the Defendants from applying it to the Plaintiffs; and (2) that the Court declare that Defendants' failure to promulgate an undue hardship waiver provision and failure to remove the requirement that New Jersey be named first remainder beneficiary to the trusts at issue are violative of federal law and to require the State of New Jersey to adopt appropriate regulations consistent with federal law. Pursuant to Fed.R.Civ.P. 78 oral argument was heard on August 9, 2001. For the reasons expressed below, Plaintiffs' application for declaratory judgment and injunctive relief is **denied** in its entirety.

1. At oral argument on August 9, 2001, Plaintiffs' counsel, Mr. Donald McHugh, notified the Court that Juanita Johnson had passed away. *See* T14:14–T15:1.

2. Plaintiffs' Second Amended Complaint alleges six causes of action against the Defendants (1) violations of 42 U.S.C. § 1983; (2) declaratory judgment on the inclusion or ex-

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The pertinent and undisputed facts are as follows. The Plaintiffs in this matter are comprised of couples with one spouse residing in a long-term care facility in the State of New Jersey ("institutionalized spouse") while the other spouse resides in the community ("community spouse"). (*See* Second Amended Compl. at ¶ 4). The community spouses are beneficiaries of Community Spouse Annuity Trusts ("CSATs"), which are at the center of this controversy. At the time the complaint was filed, some of the institutionalized spouses had been denied Medicaid eligibility based on the execution of these trusts for which Plaintiffs had filed fair hearing appeals. Other Plaintiffs had Medicaid applications pending. Eventually those with pending Medicaid applications were subsequently denied eligibility. In an Opinion and Order filed on April 7, 2001, the Honorable William G. Bassler, U.S.D.J. dismissed the Plaintiffs with prospective Medicaid applications. The following institutionalized Plaintiffs including their respective spouses remain in this matter: Juanita L. Johnson,[1] Marie L. Hicks, Phyllis R. Schaible, Stanley Prystasch, Norman V. Silbernagel, and Dorothy R. Mariani.

In their second amended complaint,[2] Plaintiffs challenge the treatment of the CSATs as countable resources in determining Medicaid eligibility and seek immunity from its application to them. When Plaintiffs applied for Medicaid benefits they were denied eligibility based on the clusion of the Community Spouse Annuity Trust in determining the Medicaid eligibility of an institutionalized spouse; (3) due process violation; (4) improper rule making in violation of both state and federal law; (5) equitable estoppel and equal protection violations; and (6) violations of New Jersey regulations.

fact that the Plaintiff couples had executed private annuitized trusts for the sole benefit of the community spouse, which were found by the DMAHS to be countable resources based on a recent policy statement issued by the Health Care and Financing Administration ("HCFA"). The inclusion of these trusts resulted in the denial of Medicaid eligibility. Shortly after being denied eligibility, Plaintiffs were given the option of converting the private annuitized trusts to commercial annuities in order to meet the eligibility requirements. Plaintiffs declined to exercise this option.

In this application, Plaintiffs claim that Defendants'[3] new treatment of CSATs constitutes impermissible rule making in violation of 5 U.S.C. § 553 and *N.J.S.A.* 52:14B–1 *et seq.* (Fourth Count). Plaintiffs also allege violations of New Jersey law pursuant to *N.J.S.A.* 30:4D–7 and *N.J.S.A.* 10:71–2.3 (Sixth Count). Plaintiffs seek a declaration from this Court that the policy adopted by the DMAHS is unenforceable based on Defendants failure to comply with federal and state rule making procedures (Second Count). Plaintiffs also claim that Defendants should be equitably estopped from taking a different position with respect to the treatment of CSATs because Plaintiffs relied on Defendants' prior treatment of the trust as excludable. (Fifth Count). Further, Plaintiffs allege

that Defendants violated 42 U.S.C. §§ 1396p *et seq.* and 1396a(a)(18) (First Count and Fourth Count) by failing to implement regulations governing undue hardship hearings and by requiring that the State of New Jersey be named first remainder beneficiary to the CSATs. *See* 42 U.S.C. § 1983. Plaintiffs also seek attorneys fees under 42 U.S.C. § 1983.

In *Johnson v. Guhl*, 91 F.Supp.2d 754 (D.N.J.2000) ("*Johnson I* ") filed on April 7, 2001, Judge Bassler addressed many of the issues raised in the instant application in the context of Plaintiffs' application for a preliminary injunction and Defendants' motion to dismiss.[4] The Court made the following determinations that are pertinent to the instant application: (1) Defendants are likely to prevail on the issue that their change in policy in mid-July of 1999 requiring assets placed in CSATs to be treated as countable resources by the New Jersey Medicaid agency is a permissible construction of the federal Medicaid statute, 42 U.S.C. § 1396p *et seq.* and that the state agency's treatment of the trusts is consistent with HCFA's Guidelines; (2) while Plaintiffs are likely to prevail on their claim regarding Defendants failure to implement undue hardship procedures as required by 42 U.S.C. § 1396p(c)(2)(D), there was no showing of immediate irreparable harm to warrant injunctive relief;

---

**3.** The Defendants in this matter include, Michele K. Guhl, then acting Commissioner of the State of New Jersey Department of Human Services, Margaret A, Murray, Director of the Division of Medical Assistance and Health Services, Edward Testa, Director of the Bergen County Board of Social Services, Elizabeth Lehmann, Director of the Morris County Board of Social Services, James Williams, Director of the Essex County Board of Social Services, and Freeholders Essex County Board of Social Services. At oral argument, the parties conceded that the Bergen County Board of Social Services was no longer a party to the action. (*See* Transcript of August 9, 2001 Oral Argument at T3:23–25).

**4.** This Court concurs with Judge Bassler's finding that the District Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides that "[t]he district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Consequently, this Court incorporates by reference Judge Bassler's analysis regarding this Court's jurisdiction over this matter. *Johnson*, 91 F.Supp.2d at 766.

and (3) Plaintiffs had a likelihood of success on the merits on their claim that the State's condition of naming the state the first remaining beneficiary of a CSAT was "more restrictive" than federal law permitted, but that there was no threat of immediate irreparable harm. Additionally, the Court dismissed Plaintiffs' claims alleging due process violations (Third Count) and equal protection violations (part of Fifth Count).

## II. MEDICAID

The Medicaid Act is a federal-state cooperative program established by Title XIX of the Social Security Act of 1965, 42 U.S.C. § 1396 *et seq.* The Medicaid program is funded in large part by the federal government and administered by the states. *See Alexander v. Choate,* 469 U.S. 287, 289 n. 1, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). States voluntarily participate in the program and must adopt plans that comply with requirements imposed by federal statues and regulations. *See Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). Consequently, Medicaid is "basically administered by each state within certain broad requirements and guidelines." *West Virginia Univ. Hosps. Inc. v. Casey,* 885 F.2d 11, 15 (3d Cir.1989).

Prior to tackling the issues before it, this Court agrees with Judge Bassler's observation that the Medicaid Act has been referred to as one of the "most completely impenetrable tests within human experience" and "dense reading of the most tortuous kind." *Johnson,* 91 F.Supp.2d at 760 (*citing Rehabilitation Ass'n of Va. v. Kozlowski,* 42 F.3d 1444, 1450 (4th Cir.1994)).

### a. Treatment of Transfers of Assets and Trusts

At the center of the action is Defendants' treatment of CSATs. The CSATs at issue are private annuitized trusts created by the couple's combined assets created for the "sole benefit of" ("sbo") the community spouse. The treatment of the transfer of assets in creating such trusts is governed by federal statutory law, 42 U.S.C. § 1396p *et seq.* and federal guidelines promulgated by HCFA in its State Medicaid Manual and administered by the Department of Health and Human Services ("HHS"), which are implemented by the states through their own rules and regulations.[5] In New Jersey the DMAHS is responsible for administering the program, *N.J.S.A.* 30:4D-4, with the assistance of the county boards of social services ("CBSS").

Prior to 1988, a married individual who was institutionalized was required to "spend down" all of the couple's jointly held assets in order to become eligible for Medicaid benefits. H.R.Rep. No. 100–105(II), 100th Cong., 2nd Sess., at 65–67 (1988), reprinted in 1988 U.S.C.C.A.N. 857, 888–90. That policy had the effect of forcing the community spouse to "spend down" virtually all of the marital assets before the institutionalized spouse could be eligible for Medicaid and resulted in "community spouses" having to sue their institutionalized spouses for support or become prematurely institutionalized themselves. *See* 1988 U.S.C.C.A.N. at 892; Torch, *Spousal Impoverishment or Enrichment? An Assessment of Asset and Income Transfers by Medicaid Applicants,* 4 Elder L.J. 459, 460–61 (1996).

In an attempt to prevent the "pauperization" of the community spouse, Congress enacted the Medicare Catastrophe Cover-

---

**5.** The New Jersey Medical Assistance and Health Services Act, *N.J.S.A.* 30:4D-1, *et seq.,* authorizes New Jersey's participation in the Medicaid program.

age Act ("MCCA") of 1988, 42 U.S.C. § 1396r–5,[6] and the Omnibus Budget Reconciliation Act ("OBRA"), 42 U.S.C. § 1396p.[7] In addition to the foregoing, the enactment of the MCCA sought to close the loophole where a couple could shelter their assets by transferring them into the community spouses name while the institutionalized spouse received Medicaid benefits. *See Johnson*, 91 F.Supp.2d at 761.

In determining Medicaid eligibility, the MCCA requires that all of the couple's resources be considered. *See* 42 U.S.C. § 1396r–5(c)(1)(A). Half of the total value of the couple's assets is considered the spousal share. *See id.* After the spousal share is determined, the community spouse is permitted only to retain a specified maximum amount indexed to inflation, which is referred to as the "community spouse resource allowance" ("CSRA"). *See* 42 U.S.C. § 1396r–5(f)(2). In New Jersey, the CSRA is governed by *N.J.S.A.* 10:71–4.8(a)(1) and only countable resources in excess of the designated amount are taken into account in determining Medicaid eligibility for the institutionalized spouse. *See* 42 U.S.C. § 1396r–5(c)(2)(B).

Although an institutionalized spouse may "spend down" excess resources to the eligibility amount, the ability of the couple to transfer excess assets in order to qualify for Medicaid is limited. *See* 42 U.S.C. § 1396p(c). In response to a concern that wealthy individuals would transfer resources in order to qualify for Medicaid benefits, the Committee on Energy and Commerce instituted a new formula under the MCCA for calculating a penalty for such activity. *See* H.R.Rep. No. 100–

105(II), at 73; 1988 U.S.C.C.A.N. at 896. For example, the transfer of a non-exempt "asset" or a couple's home for less than fair market value within a thirty-six (36) month period ("look back" period) of applying for Medicaid eligibility will result in a denial of eligibility. *See* 42 U.S.C. § 1396p(c)(1)(B)(i). The term "asset" with respect to an individual under this section is defined by the statute as:

all income and resources of the individual and of the individual's spouse, including any income or resources which the individual or such individual's spouse is entitled to but does not receive because of action (A) by the individual or such individual's spouse, (B) by a person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual or such individual's spouse, or (C) by any person, including a court or administrative body, acting at the direction or upon the request of the individual or such individual's spouse.

42 U.S.C. § 1396p(e)(1).

Similarly, the transfer of assets to a trust could also result in a penalty. This determination is based upon many factors, including but not limited to the type of interest retained by the creator and whether it was an interspousal transfer for the sole benefit of one of the spouses. Under the Medicaid Act, a "trust" includes any legal instrument or device that is similar to a trust but includes an annuity only to such extent and in such manner as the secretary specifies. 42 U.S.C. § 1396p(d)(6). Where an applicant is a permitted beneficiary of an irrevocable

---

**6.** The MCCA supersedes any inconsistent provision contained in § 1396. 42 U.S.C. § 1396r–5(a)(1). Although Congress later repealed MCCA through the Medicare Catastrophic Coverage Repeal Act of 1989 (Pub.L. No. 101–234, 103 Stat.1979), the spousal im-

poverishment prevention provisions were retained.

**7.** § 1917(c) of the Social Security Act, as amended by § 13611 of the Omnibus Budget Reconciliation Act of 1993.

trust that may be distributed to the applicant, whether it be the corpus or interest, the trust will be treated as a countable resource. *See* 42 U.S.C. § 1396p(d)(3)(B)(i). Conversely, if the applicant in no way can benefit from the trust, no part of the corpus will be considered as a countable resource to the institutionalized spouse. *See* 42 U.S.C. § 1396p(d)(3)(B)(ii). Instead, the creation of the trust will be considered a transfer of assets for less than the fair market value triggering a sixty (60) month "look back" period. *See* 42 U.S.C. § 1396p(c)(1)(B)(i).

Certain transfers between spouses through irrevocable trusts for the sole benefit of the community spouse do not trigger the penalty period under the exemptions provided by 42 U.S.C. § 1396p(c)(2)(B)(i) and (ii). These exemptions are applicable to the extent that the transfer of assets was *not* for less than fair market value and that the transfer was not executed solely for qualifying for Medicaid benefits; that is, to shelter assets. *See* 42 U.S.C. § 1396p(c)(2)(C) (emphasis added).

HCFA commonly issues policy transmittals giving direction to the states regarding the application or implementation of the federal statutes. Transmittal 64, the pertinent policy statement here, provides that where an individual can in no way benefit from the trust, no part of the corpus will be treated as a countable resource.[8] *See* HCFA Guidelines 3259.6(C). HCFA regulations provide that an sbo transfer is one where "no individual or entity except the spouse [beneficiary] ... can benefit from the assets transferred in any way, whether at the time of the transfer or at any time in the future." HCFA Guidelines § 3257(b)(6). In order for an sbo trust not to trigger the transfer penal-

ty, the "instrument or document must provide for the spending of the funds involved for the benefit of the individual on a basis that is actuarially sound based on the life expectancy of the individual involved." *Id.*

On or about April 16, 1998, Richard Streimer on behalf of HCFA, executed a letter to a private attorney ("Streimer Letter") regarding HCFA's policy on the treatment of a couples assets transferred to a trust. The letter explained that assets in a trust established solely for the benefit of a community spouse must be viewed in two contexts: (1) whether the transfer of assets for less than the fair market value subjects the institutionalized spouse to a transfer penalty; and (2) whether the asset is a countable resource. (*See* Streimer Letter Attached to Plaintiffs' Supplemental Submission). The letter also stated that since the corpus of the trust could be paid out at some point to the community spouse it could no longer be excluded from the assessment of countable resources in determining Medicaid eligibility. (*See* Streimer Letter (*citing* Section 1917(d) of the Social Security Act and HCFA Guidelines)).

After the Streimer Letter was issued, the DMAHS changed its treatment of CSATs. Instead of allowing the CSATs to be excluded from the countable resources of the couple, DMAHS treated the CSATs as countable resources in calculating the couples assets in order to determine the appropriate "spend down" amount and in order to comply with federal law. DMAHS notified the county boards of social services in the counties where there were applications pending which contained CSATs. Based on these written notifications, DMAHS through the counties de-

---

8. Note that under definitions section of the HCFA Guidelines and consistent with the federal statutes, individual includes the applicant and the applicant's spouse. *See* HCFA Guidelines 3257(B)(1).

nied the applications that contained the corpus of the CSAT as an excludable resource because the addition of the corpus of the trust to the couples assets resulted in excess assets not allowable under the "impoverishment provisions" of MCCA, 42 U.S.C. § 1396r–5 *et seq.* At the time of the denials, some applicants (including Plaintiffs) were offered to purchase commercial annuities naming the State as the first remainder beneficiary in order to become eligible for benefits.[9]

After a lengthy and comprehensive analysis, Judge Bassler in *Johnson I* found that HCFA' policies including Transmittal 64, are entitled to some deference by the reviewing courts as long as they are consistent with the plain language and purpose of the statute, and if they are consistent with prior administrative views. *Johnson,* 91 F.Supp.2d at 779 (*citing Cleary v. Waldman,* 167 F.3d 801, 808 (3d Cir.), *cert. denied,* 528 U.S. 870, 120 S.Ct. 170, 145 L.Ed.2d 144 (1999)). In *Johnson I,* the Court found that the CSATs at issue were actuarially sound irrevocable trusts allegedly created for the "sole benefit of" the community spouse. *See Johnson,* 91 F.Supp.2d at 763.[10] Based on their actuarially soundness the Court found that the CSATs were *not* subject to a transfer penalty. *See id.* The Court held that Defendant is likely to prevail on this issue of whether the CSATs are properly treated

by DMAHS as countable resources pursuant to the HCFA policy as such treatment is consistent with federal law. *See Johnson,* 91 F.Supp.2d at 779–780.

### b. Undue Hardship Provisions

Section 1396p(c)(2)(D) of the Medicaid Act Provides that:

> "the State determines, under procedures established by the State (in accordance with standards specified by the Secretary), that the denial of eligibility would work an undue hardship as determined on the basis of criteria established by the Secretary."

In Subsection (d) addressing the treatment of trust amounts in determining eligibility, the statute provides that "the State Agency shall establish procedures ... under which the agency waives the application of this subsection" where the application would work an undue hardship on the individual. 42 U.S.C. § 1396p(d)(5). Thus, it is clear that federal law requires that the states implement procedures allowing the applicants to apply for an undue hardship hearing/waiver in situations where Medicaid eligibility was denied because of the treatment of trusts or transfers of assets.

At the time the instant application was filed, DMAHS had proposed regulations to the Office of Administrative Law published

---

**9.** At oral argument, Counsel for DMAHS indicated that commercial annuities are no longer treated as excludable resources. (*See* Transcript of August 9, 2001 Oral Argument at T23:2–5). However, this is not an issue in the instant application because none of the Plaintiffs' exercised this option and Plaintiffs complaint does not challenge the treatment of commercial annuities as it cannot because such annuities were not the basis of DMAHS's denial of benefits.

**10.** Judge Bassler explained that:
> The purpose of the trust is to qualify the institutionalized spouse for Medicaid bene-

fits. According to the trust document, the trust is "actuarially sound" within the meaning of OBRA and the HCFA Guidelines because the entire income and corpus will be issued to the community spouse within his/her lifetime, as determined by the actuarial tables set forth in the HCFA Guidelines. Defendants do not dispute that the CSATs at issue are actuarially sound transfers "for the sole benefit of" the community spouse and are therefore not subject to a transfer penalty.
*Johnson,* 91 F.Supp.2d at 763.

in the June 5, 2000 edition of the New Jersey Register for notice and comment. Since the filing of the instant application, however, the State of New Jersey amended *N.J.A.C.* 10:71–4.11(i) such that is now provides for an undue hardship hearing or waiver where Medicaid eligibility has been denied. The effective date of that statute is June 18, 2001. According to the new rule, a party denied eligibility due the execution of a trust has twenty (20) days from the date of his/her denial to make such a request. The statute does *not* state that it will be applied retroactively.

### c. Requirement that State be Named First Remainder Beneficiary

There is no federal law on the issue of whether a state can require that it be named the first remainder beneficiary to a trust. Such a provision is often referred to as a "payback" provision. Two federal provisions that contain a state "payback" provision are 42 U.S.C. § 1396p(d)(4)(A) and (C), and apply only to "disability" trusts. Generally, such provisions become effective upon the death of the individual who is the named beneficiary to the trust and was also the recipient of Medicaid benefits. These provisions require that the state be named first remainder beneficiary to these trusts in order for the state to be reimbursed up to the amount paid by Medicaid on behalf of the individual. *See id.*

Despite the fact that there is no federal law on point with respect to CSATs similar to the ones at issue here, there are federal provisions that govern the recovery by the state of Medicaid benefits paid on behalf of a beneficiary. Section 1396p(b)(1) allows the states to seek recovery for medical assistance properly paid under a state plan from the recipient's estate. *See id.* Section (b)(4) goes on to define a deceased

individual's "estate" for the purposes of this subsection as follows:

(A) shall include all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law; and

(B) may include, at the option of the State (and shall include, in the case of an individual to whom paragraph (1)(C)(i) applies), any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir or assign of the deceased individual through joint tenancy, tenancy in common, survivorship life estate, living trust, or other arrangement.

42 U.S.C. § 1396p(b)(4). Further, section 1936p(e) defines "assets" with respect to an individual as "all income and resources of the individual and of the individual's spouse." The corresponding state statutes and regulations essentially mimic the federal statutes. *See N.J.S.A.* 30:4D–7.2(a)(1); *N.J.S.A.* 30:4D–7.2(a)(3); *N.J.A.C.* 10:71–4. 10(b)(3). Consequently, the federal Medicaid statutory scheme allows for the recovery of assets from the individual or individual spouses estate. This reading is consistent with the MCCA, which governs the calculation of a couples resources in order to determine Medicaid eligibility. *See* 42 U.S.C. § 1396r–5 *et seq.*

### III. DISCUSSION

Plaintiffs argue that: (1) Defendant's policy change via written notice to the county boards of social service is inapplicable to Plaintiffs since it was not validly enacted under the New Jersey State Administrative Procedure Act and Federal Administrative Procedure Act; (2) Defendant's defective policy change cannot be applied retroactively to Plaintiffs, whose Medicaid applications were filed before

DMAHS changed its policy, and therefore Defendants should be equitably estopped from applying it to Plaintiffs; (3) the proposed undue hardship regulations introduced by Defendants do not comply with the federal statutory and HCFA guidelines; and (4) Defendants continued refusal to eliminate the "more restrictive" condition that New Jersey be the first named beneficiary in direct violation of federal law and this Court's ruling of April 7, 2000.

### 1. Validity of the Treatment of CSATs as Countable Resources

█ In their original application for a preliminary injunction, Plaintiffs challenged the validity of DMAHS's treatment of the CSATs as countable resources, whereas here they are challenging the enforceability of that policy claiming that it was invalidly promulgated. In *Johnson I,* the Court indicated that Defendant's policy of including CSATs as a countable resource was consistent with HCFA's position and with federal law. *See id.* at 779. Consequently, Judge Bassler found that Plaintiffs were not likely to prevail on their challenge to the treatment of the CSATs by DMAHS. This Court agrees and adopts the reasoning set forth in *Johnson I,* which states that:

> HCFA's Guidelines and the Streimer letter, although not formal regulations, are entitled to some deference by this Court as long as "they are consistent with the plain language and purposes of the statute and if they are consistent with prior administrative views." *Cleary v. Waldman,* 167 F.3d 801, 808 (3d Cir.) (granting deference to HCFA and HHS clearly stated views, albeit in policy letters, that states have discretion to employ either income-first or resource-first method to determine Medicaid eligibility), *cert. denied,* 528 U.S. 870, 120 S.Ct. 170, 145 L.Ed.2d 144 (1999) . . .

In examining HCFA's interpretation of the treatment of irrevocable trusts, such as the CSATs at issue here, the Court determines that the agency's view is based on a permissible construction of the statute . . . The MCCA provides that when computing spousal share at the time of institutionalization, a "snapshot" of all of the couple's countable resources, which includes "the total value of the resources to the extent either the institutionalized spouse or the community spouse has an ownership interest," is taken. 42 U.S.C. § 1396r–5(c)(1). Under the plain meaning of this section, a CSAT is a resource to the community spouse, and therefore, is part of the total value of resources in determining spousal share. As discussed earlier in this opinion, if the community spouse's share exceeds the "community spouse resource allowance," then any excess must be spent down for the care of the institutionalized spouse. *See* 42 U.S.C. § 1396r–5(c)(2)(B) ("resources shall be considered to be available to an institutionalized spouse, but only to the extent that the amount of such resources exceeds" the CSRA) . . .

Moreover, HCFA's position does not frustrate Congress' intent in enacting the MCCA to enable the community spouse to live above the poverty level. Instead, it ensures that Medicaid, as it was intended, helps the truly needy and furthers the legislature's intent to "require couples to bear a reasonable amount of the costs of institutionalized care and thus preserve Medicaid resources." *Cleary v. Waldman,* 959 F.Supp. 222, 232 (D.N.J.1997), aff'd. 167 F.3d 801, 807 (3d Cir.), *cert. denied,* 528 U.S. 870, 120 S.Ct. 170, 145 L.Ed.2d 144 (1999) . . .

Finally, HCFA's Guidelines were issued after OBRA was enacted in 1993. Plain-

tiffs do not contend that the Guidelines are inconsistent with HCFA's prior administrative view. Additionally, the Streimer letter is consistent with the interpretation set forth in the Guidelines.

*Id.* at 779–780. At oral argument Plaintiffs' counsel acknowledged that Plaintiffs they are not challenging the validity of the treatment of the CSATs as countable assets. (*See* Transcript of August 9, 2001 at T12:6–10).

Based on the foregoing, this Court finds that Defendants' policy of including CSATs as countable resources is consistent with federal law.

## 2. Whether Defendants' "New" Policy is Enforceable Against the Plaintiffs

As stated above, Plaintiffs do not dispute the validity of the policy itself. Rather, Plaintiffs argue that despite this finding, the policy was not validly enacted under both the New Jersey Administrative Procedure Act ("NJ APA"), *N.J.S.A.* 52:14B–4 *et seq.*, and the Federal Administrative Procedure Act ("Federal APA"), 4 U.S.C. § 553 *et seq.*[11] Therefore, Plaintiffs argue that the policy cannot validly be applied to them. Plaintiffs assert that since their applications were submitted prior to the change in resource assessment made by HCFA, the new policy cannot be retroactively applied. Further, Plaintiffs' argue that since they relied on the prior treatment of the CSATs in determining how much they were required to "spend-down" prior to applying for Medicaid benefits, Defendants should be estopped from applying the new policy to them. Conse-

quently, Plaintiffs request that this Court enjoin the Defendants from applying the new policy to them and declare it to be unenforceable.

Plaintiffs cite to both the Federal Administrative Procedure Act ("Federal APA") and the New Jersey Administrative Procedure Act ("NJ APA") as well as supporting caselaw, in furtherance of their position. However, the Federal APA does not apply to state agencies. *See* 5 U.S.C. § 701(b)(1) (defining "agency" as certain authorities of the "Government of the United States"). Moreover, to the extent that the Defendants were in violation of New Jersey's own administrative procedures act, federal courts do not have the authority to compel state actors to comply with state law. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."); *see also Walker v. Mintzes*, 771 F.2d 920, 933 (6th Cir. 1985) ("[A] federal court should not rule upon the validity of a state regulation challenged on the sole ground that it was not properly adopted under state law by the state administrative agency.")

Nevertheless, there is some authority holding that a state administrative agency's violation of state law can, under certain circumstances, also constitute a violation of federal law thereby avoiding the Eleventh Amendment problems described in *Pennhurst*. In *Barnes v. Cohen*, 749

---

11. Notably, in their application for preliminary injunction, Plaintiffs argued that the Streimer letter is merely a response to a private attorney on a specific set of facts unknown to DMAHS and *not* a rule. *See John-*

*son*, 91 F.Supp.2d at 779. Here, Plaintiffs argue that the new policy *does* constitute a rule or regulation subject to the rulemaking procedures under the Federal and New Jersey APA.

F.2d 1009 (3rd Cir.1984), the Third Circuit held that state officials were not adhering to their own regulations that were passed in accordance with the Aid to Families with Dependent Children ("AFDC") program. *Id.* at 1018. In response to the state's argument that such a holding contravened *Pennhurst,* the Court pointed to 42 U.S.C. § 602(a)(1), which requires state AFDC plans to "be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them." *Id.* at 1019. The Court interpreted that provision as requiring states to adhere to their own AFDC regulations, and held that the state's violation of its own regulations also constituted a violation of 42 U.S.C. § 602(a)(1), rendering *Pennhurst* inapplicable. *Id.; see also Wisconsin Hosp. Ass'n v. Reivitz,* 820 F.2d 863, 868 (7th Cir.1987) ("The decree might seem to raise problems under [*Pennhurst*] ... but it does not, because the federal regulations make compliance with the state plan ... a federal duty.").

An opposite result was reached by the Second Circuit where the challenge involved a state Medicaid provision. *See Oberlander v. Perales,* 740 F.2d 116 (2d Cir.1984), *overruled on other grounds.* In *Oberlander,* the court explained that "there is no authority anywhere supporting the proposition that a state Medicaid regulation becomes a federal law merely by virtue of its inclusion in a state plan required by federal law." *Id.* at 119.

■ In the instant matter, Plaintiffs are challenging the adoption of a new "policy" by DMAHS, which is a state agency. Although the adoption was based on the Streimer Letter issued on behalf of the HHS through the HCFA, it was the manner in which the State adopted the policy that Plaintiffs are challenging. As stated above, this Court has limited authority to address challenges to state regulations un-

less they somehow implicate an issue of federal law subject to the Federal APA. *Barnes,* 749 F.2d at 1018. Plaintiffs are simply challenging DMAHS's compliance with New Jersey's rulemaking requirements in adopting the new policy. There is nothing in the federal Medicaid statute or regulations that would require DMAHS to follow the Federal APA. *See e.g. Doe. v. Bush,* 261 F.3d 1037, 1054–55 (11th Cir.2001)("federal APA did not apply to the defendants' adoption of the [state's] Status Tracking Survey, and any violations of Florida's APA are not cognizable in this type of federal court proceeding"). Therefore, this Court finds that it does not have jurisdiction to determine whether the policy contained in the Streimer letter was validly adopted under the NJ APA by DMAHS. *See Pennhurst,* 465 U.S. at 106, 104 S.Ct. 900.

Based on the foregoing, Plaintiffs request that the Court declare that DMAHS's implementation of the new policy is unenforceable for failure to comply with the NJ APA is **denied**, and Counts Two, Four and Six are dismissed to the extent they pertain to this issue.

### 3. Whether DMAHS is Equitably Estopped from Applying the Policy Retroactively

Plaintiffs allege that Defendants should be equitably estopped from applying the new policy to them because Plaintiffs relied on Defendant's previous position, and as a result of the change in the treatment of the CSATs Plaintiffs were denied Medicaid eligibility. (*See* Plaintiffs' Complaint (Fifth Count)). In addition, Plaintiffs suggest that Defendants' delay in reviewing their applications was purposeful so that the new policy would be applied to Plaintiffs' applications resulting in the denial of Medicaid eligibility.

First, as pointed out by the Defendants and conceded by Plaintiffs, equitable estoppel is rarely invoked against a governmental agency and is applied against governmental entities only in "compelling circumstances" to prevent "manifest injustice." *County of Morris v. Fauver*, 153 N.J. 80, 104, 707 A.2d 958 (1998). In fact, the use of estoppel to obtain Medicaid benefits has been rejected as it contravenes the appropriations clause, Art. I, Sec. 9, Cl. 7 of the Constitution of the United States. *See also Office of Personnel v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (holding that payments of money from the federal treasury are limited by the Appropriations Clause to those authorized by statute, and that erroneous advice given by a government employee to a claimant for benefits cannot estop the government from denying benefits not otherwise permitted by law).

Plaintiffs assert that "the conduct of DMAHS in this case as to Plaintiffs and all applicants similarly situated has been so egregious and substantially prejudicial to Plaintiffs that equitable estoppel should be invoked to prevent manifest injustice." (Plaintiffs' Memorandum in Support of Their Motion at p. 31). Plaintiffs' have presented no caselaw where such exceptional relief was granted, let alone any caselaw involving similar facts as presented here.[12]

■ As Plaintiffs have failed to present any law in support of their request that this Court estop DMAHS from applying the "new" policy to them which is admittedly consistent with the federal law and guidelines, *see supra* at section (1) of this Court's opinion, Plaintiffs' request that the Court enjoin DMAHS from applying it to them is denied.

Plaintiffs also argue that Defendants, specifically the respective county board's social services, purposely delayed the consideration of Plaintiffs' applications until the new policy was adopted in order to deny the benefits applied for. This argument is unsupported by fact or law. Plaintiffs merely cite to the regulations governing the applications process that contain time limits for processing by the county agency. The regulation provides in pertinent part:

> (d) For any application for Medicaid benefits under the provisions of this chapter, the county welfare agency must accomplish disposition of the application as soon as all factors of eligibility are met and verified but not later than 30 days from the date of application (or from the date of the inquiry form PA-1C, if applicable) for pregnant women, children, and aged individuals. For disabled and blind individuals, the standard for application disposition is 60 days.

*N.J.A.C.* 10:72–2.1(d). Plaintiffs assert that all six of the remaining institutionalized Plaintiffs' applications were not processed in a timely manner. In fact, it took the agency between eight (8) to eighteen months (18) to process those applications. (*See* Plaintiffs Memorandum at p. 29). Plaintiffs argue that this failure to comply with the time limits contained in the statute supports their argument for equitable estoppel, in that, such delays are "compelling circumstances" and that not invoking this remedy would be "manifestly unjust." This Court disagrees. As stated above, not only is this doctrine rarely invoked against a governmental agency, but al-

---

12. Plaintiffs also argue that DMAHS's failure to validly adopt the new policy weighs against its application of the Plaintiffs. As this Court has found that it has no authority to determine whether new policy was validly enacted under the NJ APA, it declines to address this argument. *See supra* at Section (2) of this Court's Opinion.

though there was a delay in processing Plaintiffs' applications, there is no evidence that these Defendants' purposely caused the delay in order to apply the new policy to Plaintiffs and deny them eligibility.

Based on the lack of any legal or factual support for their argument, Plaintiffs' request that the Court equitably estop Defendant from applying this new "policy" to them because of Defendants' alleged purposeful delay in processing of the applications is similarly denied.

Finally, Plaintiffs argue that Defendants should be enjoined from "retroactively" applying the policy change to them after delaying the processing of the applications. This argument is similarly without merit. The policy was not retroactively applied. The DMAHS became aware of its non-compliance with federal law in its treatment of CSATs while Plaintiffs' applications were pending. No determinations were made on their eligibility until the respective county board of social services departments learned from DMAHS that they would no longer be excluding CSATs when determining eligibility in order to comply with the HCFA guidelines. Consequently, Plaintiffs applications were considered and denied in accordance with the law being followed at that time. Thus, there was no retroactive application of the policy to the Plaintiffs as Plaintiffs' applications were pending when the policy change occurred.

Based on the foregoing, Plaintiffs' request that the Court equitably estop Defendants from applying the change in policy is **denied**. Count Five of Plaintiffs' Complaint is dismissed.

### 4. Undue Hardship Regulations

Plaintiffs argue that the denials of their applications, which do not provide notice of undue hardship waivers and an opportunity for a hearing, are violative of federal law. *See* 42 U.S.C. § 1396p(d)(5) and § 1396a(a)(18). As a result, Plaintiffs request that this Court compel the Defendants to immediately adopt regulations that are in accordance with federal standards and require the Defendants to approve Plaintiffs' whose Medicaid applications were pending at the outset of this litigation and subsequently denied without undue hardship hearings.

There are several circumstances under which federal law requires that the state Medicaid plans include a procedure to determine whether an "undue hardship" exception applies. *See* 42 U.S.C. § 1396p *et seq.* Sections 3258.10 and 3259.8 of the HCFA guidelines reiterate the same requirements. Plaintiffs cite to 42 U.S.C. § 1396p(c)(2)(D), which pertains to transfers of assets and requires that the states provide notice of an undue hardship waiver/hearing when denying Medicaid eligibility. This Court notes that such undue hardship waiver provisions are also provided with respect to the treatment of trusts in 42 U.S.C. § 1396p(d)(5). This provision pertaining to the treatment of irrevocable trusts provides:

> [t]he State shall establish procedures (in accordance with standards specified by the secretary) under which the agency waives the application of this subsection with respect to an individual if the individual if the individual established that such an application shall work an undue hardship on the individual as determined on the basis of criteria established by the Secretary.

*Id.*

In *Johnson*, the Court found that although injunctive relief was not warranted with respect to the issue of undue hardship hearings, "[i]t is evident from the legislative history that it is mandatory that the states provide for an undue hardship ex-

ception." *Johnson,* 91 F.Supp.2d at 775. In fact, the court explained that such regulations are required to provide the following:

(1) notice to a recipient that an undue hardship exists; (2) a timely process for determining whether an undue hardship waiver will be granted; and (3) a process under which an adverse determination can be appealed.

*Id.* Judge Bassler stated that if the Defendants did . . .

not *initiate* the process of implementing regulations governing the undue hardship exception by the end of April 2000, or the Defendants' do not provide these specific Plaintiffs the opportunity to have an undue hardship hearing in accordance with the standards set forth in the HCFA Guidelines, Plaintiff may seek appropriate relief from this Court.

*Id.* at 777.

When Plaintiffs were originally denied benefits, the denials did not contain a notice of an opportunity to have an undue hardship hearing. However, subsequently, Defendants offered Plaintiffs an opportunity for undue hardship hearings through a letter attached to the denials. Nevertheless, Plaintiffs chose not avail themselves of this offer stating that this "ad hoc" attempt was legally deficient. (*See* Plaintiffs' Memorandum at p. 25). At the time the instant motion was filed, DMAHS had proposed regulations to the Office of Administrative Law regarding undue hardship provisions. Subsequently, while this application was pending the proposed regulations were codified in *N.J.A.C.* 10:71–4.10(q) effective June 18, 2001. The provision specifically provides:

(q) Upon imposition of a period of ineligibility for long-term care level services because of an asset transfer, the county board of social services shall notify the applicant/beneficiary of his or her right to request an undue hardship exception. An applicant/beneficiary may apply for an exception to the transfer of asset penalty if he or she can show that the penalty will cause an undue hardship to him or herself. The applicant/beneficiary shall provide sufficient documentation to support the request for an undue hardship waiver to the county board of social services within 20 days of notification of the transfer penalty.

*N.J.A.C.* 10:71–4.10(q). These undue hardship waivers apply to the CSATs at issue here. *See N.J.A.C.* 10:71–4.10(p)(1) and 10:71–4.10(p)(2)(i).

■ At oral argument, Plaintiffs' counsel acknowledged that the regulations were adopted, however, he stated that they were still deficient as they did not comply with all of the requirements of the federal statute. For instance, Plaintiffs' counsel indicated that the new regulation did not contain time limits within which an applicant would have the hearing. *See* Transcript from the August 9, 2001 Oral Argument at T26:14–20. This Court finds that this is a minimal deficiency, which is not explicitly required by federal regulations or statutes; only a timely process for determining whether an undue hardship waiver will be granted is required. *See* HCFA Guidelines 3258.10. Moreover, as indicated by Judge Bassler, Plaintiffs could resort to *N.J.S.A.* 52:14B–4(f), which authorizes and sets forth the procedures for an interested person to petition an agency to promulgate, amend or repeal any rule. *See Johnson,* 91 F.Supp.2d at 777.

Since this Court finds that Defendants substantially complied with both federal law and Judge Bassler's directive by enacting the proper undue hardship provisions and provided Plaintiffs with the opportunity for undue hardship hearings, the relief requested by Plaintiffs' is **denied** as

moot and the portion of Count Five of Plaintiffs' Complaint alleging violations of 42 U.S.C. § 1983 is dismissed.

### 5. Validity of Condition that New Jersey be Named First Remaining Beneficiary to the CSATs

Plaintiffs seek a declaration from the Court that the requirement that the State be named first remainder beneficiary to the CSATs, thus requiring state "payback," is "more restrictive" than the federal requirements permit.[13] In *Johnson I*, Judge Bassler stated that since the CSATs at issue were includable resources, Plaintiffs were likely to prevail on their claim that the requirement that the State be named the first beneficiary to the CSATs was "more restrictive" than federal law provides. *See Johnson* 91 F.Supp.2d at 780 (*citing* 42 U.S.C. 1396p(b)(1); *N.J.S.A.* 30:4D–7.2). Moreover, the Court stated that "[i]n the event, however, that the defendants fail to eliminate this requirement naming the State as first beneficiary to the CSATs, Plaintiffs may seek the appropriate relief." *Id.* at 781.

Plaintiffs argue that Defendant's failure to eliminate this requirement is violative of federal law as well as the Court's ruling in *Johnson I.* At the time Plaintiffs filed this application, proposed regulations were pending. Subsequently on July 18, 2001 the New Jersey regulations that pertain to trusts and treatment of trusts were amended. *N.J.A.C.* 10:71–4.10 and 4.11. Nevertheless, at oral argument Plaintiffs maintained that the amendment was not

sufficient and that the proposed amendments that were subsequently adopted, in fact, expanded the "payback" provision to all commercial annuities. *See N.J.A.C.* 10:71–4.10, *et seq.* The Court notes, however, that the only issue before the Court is the treatment of the CSATs and not the commercial annuities despite Plaintiffs argument to the contrary.[14]

In light of the fact that the State regulations were amended after the original motion was filed by the Plaintiffs, after oral argument on August 9, 2001, this Court requested that the parties submit supplemental briefing on whether the amended regulation(s) were still "more restrictive" than allowed by federal law.

Plaintiffs essentially made three arguments in support of their request that the Court declare that the requirement that the state be named first remainder beneficiary is violative of federal law, and require the state to take the appropriate action to remedy this error. They are: (1) Defendants' failure to remove the requirement that the state be named first beneficiary is violative of Judge Bassler's finding and of federal law; (2) interspousal transfers for the "sole benefit of" one of the spouses are exempt from the transfer provisions and related penalties; and (3) the absence of federal legislation on point demonstrates the legislature's intent to implicitly preempt the states from promulgating rules or regulations to this effect.

As a threshold matter, the Court will address Judge Bassler's finding that Plaintiffs were likely to prevail on their claim

---

**13.** Although this particular allegation is not contained in any of the counts of Plaintiffs' second amended complaint, it is contained in paragraph 26 where Plaintiffs allege that the inclusion of such a provision is violative of 42 U.S.C. § 1396p(c)(4).

**14.** Plaintiffs argue that the commercial annuities offered to them by DMAHS to replace the

CSATs in order to confer eligibility are also at issue here because by offering the annuities, DMAHS put them at issue. This Court disagrees. Neither the complaint nor the facts support such a finding. Therefore, this Court will not address Plaintiffs argument regarding the commercial annuities.

that the requirement that the State be named the first beneficiary to the CSATs was "more restrictive" that allowed by federal law. In reaching this conclusion, the Court relied on 42 U.S.C. § 1396p(b)(1) and *N.J.S.A.* 30:4D–7.2, which govern liens against the estate of the recipient. A narrow reading of solely these provisions appears to indicate that a state may only impose a lien against the estate of the recipient of Medicaid benefits. In this case the putative recipient of benefits is the institutionalized spouse. Thus, Plaintiffs argue that under these provisions no recovery could be sought from any portion of the CSAT to which the community spouse was a beneficiary.

Medicaid law was not drafted in such a narrow straightforward manner. A full reading of the statute including the definitions and in conjunction with the legislative intent underlying the promulgation of the MCCA, requires a different result than previously contemplated by the Court. As indicated above, the legislature in enacting MCCA intended to prevent the sheltering of assets by Medicaid applicants with assets in excess of the amount allowed by law while allowing a community spouse to live above the poverty. Further, a thorough reading of section 1396p(b), including subsection (b)(4) and section 1396p(e) demonstrates that the federal Medicaid law intended to give states a means to recover benefits paid out to an institutionalized Medicaid recipient upon the death of the community spouse to the extent that the remainder is to be paid out to a third party beneficiary. Analogous statutes and regulations were promulgated by the State of New Jersey in *N.J.S.A.* 30:4D–7.2(a)(3) and *N.J.A.C.* 10:71–4.10(b)(3). These statutes and regulations are no broader than the federal statutes. In fact, they are almost identical.

■ Based on the promulgation of the MCCA and the applicable federal statutes, this Court finds that the requirement that the state be named first remainder beneficiary to a CSAT was undoubtedly contemplated by the legislature. In determining Medicaid eligibility, the MCCA resource rules require that all of the couple's resources be considered. *See* 42 U.S.C. § 1396r5(c)(1)(A). The application of the challenged provision allows the State to recover money owed on behalf of the institutionalized spouse upon the death of the community spouse to the extent that any funds remained in the trust. This is plainly consistent with the federal statutes and the legislative intent underlying the enactment of MCCA and OBRA 1993.

This Court does not find that the requirement is "more restrictive" than allowed by federal law. Accordingly, this Court finds Plaintiffs argument that Defendants' failure to abide by Judge Bassler's Order in not removing out the requirement unconvincing.

■ Plaintiffs also argue that under section 1396p(c)(2)(B), interspousal transfers through "sole benefit of" trusts are exempt from liens pursuant to section 1396p(b). Consequently, Plaintiffs argue that *N.J.A.C.* 10–71–4.10(b)8 and 10–71–4.10(f),[15] even as amended, are contrary to

---

**15.** *N.J.A.C.* 10–71–4.10(b)8 and 10–71–4.10(f) provide:

(b) 8. In order for a transfer of assets to be considered to be for the sole benefit of a spouse, disabled child, or disabled individual under the age of 65, for the purposes of this subchapter, the transfer shall have been arranged in such a way that no individual except the spouse, disabled child, or disabled individual under age 65 can, in any way, benefit from the assets transferred either at the time of the transfer, or at any time in the future. For the purpose of this subchapter, the person administering the funds shall only be compensated for the reasonable costs that can be directly attrib-

the exemptions regarding assets transfers between spouses and by trust instruments in 42 U.S.C. § 1396p(c)(2)(B)(i), (ii), (iii) and (iv). However, section 1396p(c)(2)(B) applies only to "sole benefit of" trusts and transfers. Since this Court found that the CSATs at issue were not truly sbo trusts because the corpus could be paid to the community spouse during his/her lifetime, the exemption does not apply. Therefore, this Court finds Plaintiffs' argument unpersuasive.

Although the Court finds that based on this second argument Plaintiffs are not entitled to the relief requested, it nonetheless finds DMAHS's argument flawed. DMAHS argues that the pertinent provision is *N.J.A.C.* 10:71–4.11(f), which was amended, removes out the requirement that the State be named the first remainder beneficiary to an annuitized trust executed for the benefit of the community spouse and at the same time recognized that the CSATs are a countable resource.

See *id.*[16] DMAHS contends that this amendment eliminates the "payback" requirement originally found to be "more restrictive" than allowed by federal law. DMAHS points out that "[t]he State takes nothing from the trust upon the expiration of the institutionalized spouse." (Defendants' Supplemental Brief at p. 4).

First, this Court cannot find, nor has DMAHS specifically pointed to the portion of *N.J.A.C.* 10:71–4.11(f) that was eliminated as a result of the amendment and which pertained to the issue raised here. Although the requirement is not contained in that provision, there is such a requirement contained in *N.J.A.C.* 10:71–4.10(f). However, as stated above the Court found that such a requirement was consistent with federal law. Second, the issue before the Court was not whether a lien could be asserted against the recipient of Medicaid benefits, but rather whether the Defendants had the authority to impose a lien

utable to the administration of the funds and for compensation for that administration. In no event shall such compensation exceed the amounts allowed by law for the administration of trusts. The transfer of asset penalty exemption for transfers made for the sole benefit of the spouse, disabled child or disabled individual under the age of 65 does not impact the treatment of trust pursuant to N.J.A.C. 10:71–4.11.

    i. If the transfer instrument provides that there are *beneficiaries other than* a blind or disabled child, or a disabled individual under the age of 65, *the sole benefit requirement shall not have been met if the instrument fails to provide that the State shall be the first remaining beneficiary of residual funds prior to disbursement to any other beneficiary.*

f) In determining whether an asset was transferred for the sole benefit of a spouse, child or disabled individual as defined in N.J.A.C. 10:71–4.10(b) 8, the transfer shall be accomplished via a written instrument of transfer, such as a trust document, which legally binds the parties to a specific course of action and which clearly sets out the

conditions under which the transfer was made, as well as who can benefit from the transfer. Moreover, the written instrument shall state that the State of New Jersey shall be the first remaining beneficiary. A transfer without such a document shall not be considered to have been made for the sole benefit of the spouse, child or disabled individual.

16. *N.J.A.C.* 10:71–4.11(f) provides:

Transfer to a trust (or similar instrument, including an annuitized trust) for the *sole benefit of* a community spouse shall be treated in accordance with the provisions of (e) above. If the trust is established by either member of the couple (*using at least some of the couple's assets*), the trust shall be reviewed by the county board of social services for availability of resources, in accordance with (e) above. If the payment from such a trust shall be considered an available resource to either spouse, the trust shall be included as a countable resources in determining Medicaid eligibility for the institutionalized spouse pursuant to *N.J.A.C.* 10:71–4.8.

against the estate of a direct beneficiary's spouse at his/her death. Therefore, DMAHS's statement regarding the institutionalized spouse is of no moment.

Finally, Plaintiffs argue that the federal legislature's failure to implement a "payback" provision is evidence of its intent that the states should refrain from imposing such a provision because the legislature implicitly intended to preempt such regulations. This argument, however, is unsupported by the Medicaid scheme. As indicated above, the Medicaid Act is a cooperative federal-state program funded by the federal government and administered by the States. *See Alexander v. Choate,* 469 U.S. 287, 289 n. 1, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). The actual program is "administered by each state within certain *broad* requirements and guidelines." *West Virginia Univ. Hosps. Inc. v. Casey,* 885 F.2d 11, 15 (3d Cir.1989) (emphasis added).

■■■ This Court acknowledges that as a general matter the Medicaid Act does not expressly preempt state laws and regulations. Indeed, federal preemption of state law can occur in three circumstances: (1) express preemption where Congress explicitly preempts state law; (2) implied preemption where Congress has occupied the entire field (field preemption); and (3) implied preemption where there is an actual conflict between federal and state law (conflict preemption). *English v. General Elec. Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990).

■■■ The first and second circumstances clearly do not apply. Here, there is no express federal preemption or any explicit conflict between the state and federal law. If no explicit statutory language exists, then "state law is preempted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *English v.*

*General Electric Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). This can be implied if a pervasive regulatory scheme leaves no room for supplementation by state law or if a statute regulates a field dominated by the federal government. *Id.* The comprehensive nature of a federal regulatory scheme, however, is not sufficient to support the conclusion that Congress intends to preempt all state regulation. *See Hillsborough County v. Automated Med. Lab. Inc.,* 471 U.S. 707, 717, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) ("To infer preemption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive. Such a rule, of course, would be inconsistent with the federal-state balance embodied in our Supremacy Clause jurisprudence").

Plaintiffs essentially argue that the failure of the federal legislature to include a "payback" provision with respect to CSATs in the applicable federal statutes, 42 U.S.C. § 1396p(c)(2)(b) and (d)(6), when it explicitly provided for such a "payback" provision in Section 1396p(d)(4)(A) and (C) regarding the treatment of "disability trusts," evidences the legislature's intent not to impose such a requirement. (*See* Plaintiffs' Brief in Support of Their Motion for Declaratory Judgment and Injunctive Relief at p. 33; Plaintiffs' Supplemental Brief at p. 3). Specifically, Plaintiffs assert that "[i]n the absence of federal authority the State is powerless to impose these more restrictive conditions." *Id.*

■■■ Without any citation to any law, Plaintiffs argue that the absence of a requirement for a "payback" provision naming the State as a first beneficiary under these limited circumstances, requires a finding that the federal legislature intend-

ed to bar this activity. Such a finding is unsupported by law or fact. However, as indicated above the Medicaid scheme is a federal-state cooperative wherein the states are given broad discretion to implement the program. *See Alexander*, 469 U.S. at 298, n. 1, 105 S.Ct. 712. Here, the requisite expression of preemptive intent is plainly lacking.

Therefore, Plaintiffs' request that this Court declare that the State regulations are "more restrictive" than allowed by federal law is **denied,** and its request that this Court order the State to promulgate any law to this affect is similarly **denied.** Further, Count One of Plaintiffs complaint as it pertains to this issue is dismissed. As pointed out by Judge Bassler, if applicants have other grounds for objecting to the State provisions requiring that the State be named the first beneficiary on these types of trusts, it can petition the state agency to promulgate, amend or repeal any rule. *see Johnson,* 91 F.Supp.2d at 777 (*citing N.J.S.A.* 52:14B–4(f)).

## IV. CONCLUSION

Based on the forgoing, Plaintiffs' motion for declaratory judgment and injunctive relief is **denied** and Plaintiffs' complaint is **dismissed.** An order accompanies this opinion.

## ORDER

This matter having come before the Court on motion by Plaintiffs for Declaratory Judgment and Injunctive Relief, and the Court having considered the papers submitted by the parties and having heard oral argument on August 9, 2001, and for good cause shown,

IT IS on this 27th DAY of SEPTEMBER, 2001;

**ORDERED** that Plaintiffs' motion is **denied** and their complaint **dismissed.**